No. 96,921

STATE OF KANSAS, *Appellee*, v. CHARLES ADAM BOGGS, *Appellant*.
(197 P.3d 441)

Opinion filed December 5, 2008.

*Shawn E. Minihan,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Ty Kaufman,* county attorney, argued the cause, and *Paul J. Morrison,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: This is a criminal case involving the nonexclusive possession of marijuana and drug paraphernalia. Over the defendant's objection, the district court admitted evidence of the defendant's prior crime of possession of marijuana. The Court of Appeals held the admission of that evidence violated K.S.A. 60-455, reversed the defendant's convictions, and remanded the case with directions for a new trial. *State v. Boggs,* 38 Kan. App. 2d 683, 170 P.3d 912 (2007). We agree and affirm the Court of Appeals' reversal of the district court and Boggs' convictions based on the K.S.A. 60-455 issues in the State's petition for review.

Facts

The incident giving rise to the defendant's convictions for felony possession of marijuana and misdemeanor possession of drug paraphernalia began at about 3 a.m. on October 29, 2005. Captain Charles Allcock and Officer Meagher of the McPherson Police Department initiated a traffic stop of a pickup truck on suspicion that the driver was operating the vehicle under the influence of alcohol (DUI). The driver of the pickup, Matthew Hockett, and the passenger, Charles Boggs, were the only occupants of the truck.

Captain Allcock explained that when he initiated the stop, he smelled the odor of alcohol on Hockett and thus initiated a DUI investigation. Allcock told Boggs that he was not needed during the investigation and was free to leave. Boggs exited the truck and began to walk away from the scene on foot.

As part of this investigation, the officers searched Hockett's pickup and discovered a multicolored, glass marijuana pipe containing burnt marijuana residue underneath the passenger seat where Boggs had been sitting. Allcock testified that the pipe was

found out of the driver's reach and that he had not noticed the driver leaning over or making unusual movements in the pickup at any time after the officers initiated the stop.

Captain Allcock indicated that after he found the glass pipe, he showed the pipe to Hockett, who responded, "That son of a bitch Charlie Boggs, I can't believe he brought this into my dad's pickup." Allcock then asked Officer Meagher to request that Boggs return to the pickup. After Boggs returned and was read *Miranda* warnings, Allcock showed Boggs the pipe; Allcock testified that Boggs did not act "particularly surprised" with the revelation. Allcock asked Boggs if the pipe belonged to him. Boggs responded that the pipe was not his.

Captain Allcock further testified that while he was speaking with Boggs, he noticed the odor of burnt marijuana emanating from Boggs' clothing. Allcock explained that he had been in close proximity to Hockett while conducting the DUI investigation and had not smelled the odor of burnt marijuana coming from the driver.

Both Boggs and Hockett were arrested. When the officers, Boggs, and Hockett arrived at the law enforcement center, Allcock noticed that Boggs' pupils were dilated and that his clothes still smelled of burnt marijuana. Officer Meagher asked Boggs when the last time was that Boggs had smoked marijuana, and Boggs responded that it had been about a month before.

Other than Captain Allcock and a KBI forensic scientist, Hockett was the only witness called for the State at trial. He testified that for most of the day before the traffic stop, he and Boggs had been at an acquaintance's house in McPherson. Hockett stated that he had driven to the house alone in his father's pickup truck. He also explained that he doubted that he had locked the truck while he was at the house because he rarely locks the pickup. Nevertheless, he testified that he never saw anyone in the pickup during that time.

According to Hockett, there were five or six people at the house in McPherson that evening. He explained that when Boggs first arrived at the house, Boggs showed Hockett and a few other people a glass pipe. Hockett later testified that the pipe Boggs carried

looked like the same pipe that the officers later found in his father's pickup.

Hockett decided to leave the party at around 3 a.m. and agreed to give Boggs a ride to go find cigarettes and food. Hockett testified that before they left their acquaintance's house, Hockett asked Boggs if he "had anything on him that would get me [Hockett] in trouble or could possibly get him [Boggs] in trouble" because Hockett was concerned about the pipe he had seen earlier in the day. Boggs answered that he did not have anything like that with him. Shortly after they left the house, Captain Allcock and Officer Meagher pulled over Hockett in the pickup truck for suspicion of DUI.

Before trial, Boggs filed a motion in limine, requesting the court to prevent the State from introducing evidence of Boggs' statement to Officer Meagher at the law enforcement center that he had smoked marijuana about a month before the arrest. Boggs argued that the evidence of his prior marijuana usage was evidence of prior criminal acts governed by K.S.A. 60-455 and that the evidence was being admitted solely for the purpose of showing he had a propensity toward using drugs in violation of the statute. The district court overruled Boggs' motion on the eve of trial, finding that "[i]n nonexclusive possession cases[,] prior criminal [sic] or use of drugs is a factor to be considered by the jury."

Boggs renewed his objection to the admission of the evidence of his prior drug use when Captain Allcock testified at trial regarding Boggs' statement to Officer Meagher.

Boggs' principal defense at trial was that he was not in possession of the pipe and residue within the meaning of Kansas law. Boggs stipulated that the glass pipe found in the pickup truck was drug paraphernalia under Kansas law. In addition, he did not dispute that the glass pipe contained marijuana residue but, instead, argued that the residue in the pipe was so insignificant that it should not lead to a criminal conviction.

At the close of evidence, the court instructed the jury on the law to be applied in the case. Among other instructions given, the court provided the following three instructions:

"Instruction No. 4

"The Parties stipulate that the glass pipe found under the front seat in the vehicle in which defendant was riding is 'drug paraphernalia' as defined by law and as applies to the other instructions in this case."

"Instruction No. 5

"Possession of a controlled substance and/or drug paraphernalia requires that the defendant have control over the substance and/or drug paraphernalia with knowledge of and the intent to have such control. To possess a controlled substance and/or drug paraphernalia, the Defendant must have knowledge of the presence of a the controlled substance and/or drug paraphernalia with the intent to exercise control over it. Control means to exercise a restraining or directing influence over the controlled substance and/or drug paraphernalia.

"Possession may be immediate and exclusive, jointly held with another, or constructive. Joint possession occurs when two or more person[s], who have the power or control and intent to manage property, exercise the same jointly. Constructive possession is knowingly keeping a controlled substance and/or drug paraphernalia[] in a place to which the Defendant has some measure of access and right of control[.]

"When a Defendant is in nonexclusive possession of an automobile in which a controlled substance and/or drug paraphernalia is found, it cannot be inferred that the Defendant knowingly possessed the controlled substance and/or drug paraphernalia unless there are other circumstances linking the Defendant to the controlled substance and/or drug paraphernalia: Factors you may consider in determining whether the Defendant knowingly possessed the control[led] substance and/or drug paraphernalia, include[]:

"1. Defendant's use of controlled substance.
"2. Defendant's proximity to the area where the controlled substance and/or drug paraphernalia was found.
"3. Incriminating statements of the Defendant; and
"4. Suspicious behavior of the Defendant[.]"

"Instruction No. 6

"Evidence has been admitted tending to prove that the Defendant committed a crime other than the present crime charged i.e. use of marijuana on a prior occasion. This evidence may be considered by you solely for the purpose of proving the Defendant's intent, knowledge and absence of mistake or accident in this case."

Although Boggs did not object to the form of these instructions, he renewed his earlier objection to the admission of his statement to Officer Meagher that he had previously used drugs.

The jury found Boggs guilty of both felony possession of marijuana and misdemeanor possession of drug paraphernalia.

Boggs appealed. In a published opinion authored by Judge Green, the Court of Appeals reversed Boggs' convictions, holding that the evidence of Boggs' prior marijuana use was inadmissible under K.S.A. 60-455. *Boggs*, 38 Kan. App. 2d 683. We granted the State's petition for review.

In its amended petition for review and its argument before this court, the State advances the following reasons for reversing the decision of the Court of Appeals and affirming the district court: (1) This court's decision in *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006), requiring compliance with K.S.A. 60-455 regarding the admission of evidence that "a person committed a crime or civil wrong" has prospective application only and therefore does not apply in Boggs' case because it was tried before *Gunby* was decided; (2) the Court of Appeals improperly applied a de novo standard of review rather than an abuse-of-discretion standard regarding admission of the K.S.A. 60-455 evidence; (3) the Court of Appeals erred in ruling that prior drug use is not a factor to be considered in a nonexclusive possession case; and (4) the Court of Appeals erred in concluding that the evidence of Boggs' prior marijuana use was not harmless because the appellate court engaged in an improper weighing of Hockett's testimony.

## Discussion

All of the issues raised in the State's petition for review center on the Court of Appeals' conclusion that the admission of evidence relating to Boggs' prior marijuana use violated K.S.A. 60-455.

K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

In *Gunby*, 282 Kan. at 47-48, this court recently clarified that if not admissible as character evidence under K.S.A. 60-447, evidence of other crimes or civil wrongs is *inadmissible* unless the evidence is relevant to proving a material fact in dispute. Furthermore, even when such evidence is admissible, *Gunby* requires district courts to undergo several safeguards "to eliminate the danger that the evidence will be considered to prove the defendant's mere propensity to commit the charged crime." 282 Kan. at 48.

*Gunby* reiterated this court's previous rulings explaining that "at least three types of prejudice can follow" from the improper admission of evidence of other crimes or civil wrongs. 282 Kan. at 48. To illustrate these dangers, *Gunby* quoted *State v. Davis*, 213 Kan. 54, 58, 515 P.2d 802 (1973), where the court explained:

" ' "First, a jury might well exaggerate the value of other crimes as evidence proving that, because the defendant has committed a similar crime before, it might properly be inferred that he committed this one. Secondly, the jury might conclude that the defendant deserves punishment because he is a general wrongdoer even if the prosecution has not established guilt beyond a reasonable doubt in the prosecution at hand. Thirdly, the jury might conclude that because the defendant is a criminal, the evidence put in on his behalf should not be believed." ' " 282 Kan. at 48-49.

Boggs argues that the evidence of his prior marijuana use was not relevant to any material fact in question because his defense consisted of a denial that he ever had possession of the pipe and, by extension, the marijuana residue. According to Boggs, this evidence only served to demonstrate a propensity toward drug use and therefore implicated all of the fundamental dangers discussed in *Davis* and *Gunby*. The Court of Appeals agreed, concluding that the district court committed reversible error when it admitted the evidence at trial. *Boggs*, 38 Kan. App. 2d at 686-94.

I. Does the rule set forth in *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006), apply to the defendant's direct appeal?

The State argues that our decision in *Gunby*, which was decided in October 2006, does not apply in this case since it was filed after the conclusion of Boggs' trial. In *Gaudina v. State*, 278 Kan. 103, 106, 92 P.3d 574 (2004), this court adopted the rule set forth by the United States Supreme Court in *Griffith v. Kentucky*, 479 U.S.

314, 328, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987), explaining that
" 'a new rule for the conduct of criminal prosecutions is to be ap-
plied . . . to all cases, state or federal, *pending on direct review
or not yet final.*' " (Emphasis added.) We have previously explained
that a conviction is "generally not considered 'final' until (1) the
judgment of conviction has been rendered, (2) the availability of
an appeal has been exhausted, and (3) the time for any rehearing
or final review has passed. [Citation omitted.]" *State v. Heath,* 222
Kan. 50, 54, 563 P.2d 418 (1977). Thus, contrary to the State's
argument, decisions are not applied "retroactively" to cases on di-
rect appeal from a conviction. Rather, the retroactivity of a decision
is only a consideration during collateral attacks to convictions that
became final before the decision in question was filed.

Although Boggs' trial concluded months before we filed our de-
cision in *Gunby,* we are currently in the process of considering his
direct appeal. Under our opinions in *Gaudina* and *Heath,* Boggs'
convictions are not final. Thus, our decision in *Gunby* applies to
this case regardless of whether it would be applied retroactively on
collateral attack. See *Drach v. Bruce,* 281 Kan. 1058, 1072, 136
P.3d 390 (2006) (distinguishing direct appeals from collateral at-
tacks on convictions and setting forth the requirements for new
rules to be applied retroactively during collateral appeals).

This conclusion is supported by our recent decisions applying
*Gunby* to pending cases on direct review or not yet final. See *State
v. Vasquez,* 287 Kan. 40, 48-51, 194 P.3d 563 (2008) (appeal filed
October 27, 2005); *State v. Reid,* 286 Kan. 494, 502-13, 186 P.3d
713 (2008) (appeal filed December 23, 2004); *State v. Garcia,* 285
Kan. 1, 11-13, 169 P.3d 1069 (2007) (appeal filed February 11,
2005); *State v. Woolverton,* 284 Kan. 59, 63-64, 159 P.3d 985
(2007) (appeal filed January 21, 2005); *State v. Conway,* 284 Kan.
37, 49-50, 159 P.3d 917 (2007) (appeal filed December 23, 2004);
*State v. Walters,* 284 Kan. 1, 8, 12-13, 159 P.3d 174 (2007) (appeal
filed July 6, 2004); *State v. Horton,* 283 Kan. 44, 51-52, 151 P.3d
9 (2007) (appeal filed February 25, 2005). The trials in each of
these cases concluded long before this court decided *Gunby* on
October 27, 2006. Nevertheless, we have applied *Gunby's* rationale
to each of these cases pending on direct appeal.

Because this case involves a direct appeal from Boggs' convictions, the Court of Appeals correctly concluded that our decision in *Gunby* governs the admission of the evidence at issue in this case.

II. What is the proper standard that an appellate court should apply when reviewing the admission of the K.S.A. 60-455 evidence in this case?

The State argues that the Court of Appeals applied an incorrect standard of review when considering the district court's decision to admit the evidence of Boggs' prior drug use. According to the State, all questions regarding the admission of evidence should be reviewed under an abuse-of-discretion standard. The Court of Appeals determined that because the admission of evidence under K.S.A. 60-455 is governed by that statute, the case presented a legal question that should be reviewed de novo. *Boggs,* 38 Kan. App. 2d at 688 (citing *Gunby,* 282 Kan. at 47-48).

The standard this court applies in reviewing a district court's decision involving the admission or exclusion of evidence is guided by the level of discretion that the district court could exercise in making that decision under Kansas law. For example, *Gunby* explained that when the "legal basis" of the district court's decision is raised on appeal, appellate courts review such questions de novo. 282 Kan. at 47-48. If the decision at issue is one where the district court is afforded greater discretion, such as the balancing of a piece of evidence's probative value versus the risk of undue prejudice under K.S.A. 60-445, then the district court's decision will not be overturned on appeal if reasonable minds could disagree as to the court's decision. See *State v. Miller,* 284 Kan. 682, 722-24, 163 P.3d 267 (2007) (Luckert, J., concurring).

This court explained in *Garcia,* 285 Kan. 1, that the analysis of evidence under K.S.A. 60-455 involves several steps: (1) A reviewing court must determine whether the evidence in question is relevant to prove a material fact; (2) the court must determine whether the particular material fact that forms the basis of the admission is in dispute; (3) the court must determine whether the probative value of the evidence outweighs its potential for undue

prejudice; and (4) the court must provide a limiting instruction "informing the jury of the specific purpose for admission whenever [K.S.A.] 60-455 evidence comes in." 285 Kan. at 12 (citing *Gunby*, 282 Kan. at 48, 56-57).

In our recent decisions in *Vasquez* and *Reid*, we clarified the standards that appellate courts utilize to review each of these steps. In the first step—the relevance inquiry—courts are called on to assess both the probative value of the evidence to be admitted and whether that evidence is being admitted for the purpose of proving a material fact. The probative value of the evidence is reviewed for an abuse of discretion; the materiality question requires a legal determination as to the elements of a particular offense and is therefore reviewed de novo. *Vasquez*, 287 Kan. at 50; *Reid*, 286 Kan. at 505, 507-09. The second step in the analysis, which involves a question as to whether the material fact alleged is actually in dispute, is similarly reviewed de novo since it requires the court to assess the elements of the charged offense. *Vasquez*, 287 Kan. at 50. The subsequent weighing of the evidence's probative value versus its potential for producing undue prejudice requires an exercise of discretion by the district court, and appellate courts therefore review such determinations for an abuse of that discretion. *Vasquez*, 287 Kan. at 50; *Reid*, 286 Kan. at 507-09, 512. The district court's compliance with the limiting-instruction requirement is reviewed under the same rules that govern this court's review of other jury instructions. See *Vasquez*, 287 Kan. 40, Syl ¶ 6; K.S.A. 22-3414(3) (clearly erroneous standard).

In the instant case, the focus of the State's argument is its claim that the evidence of Boggs' prior drug use was relevant to prove his intent to possess the drugs and drug paraphernalia, his knowledge that the pipe actually consisted of drugs and drug paraphernalia, and the absence of a mistake. The Court of Appeals questioned the district court's relevance determination, finding that prior drug use does not necessarily prove intent, knowledge, and absence of mistake or accident in a subsequent possession case. *Boggs*, 38 Kan. App. 2d at 688-89. The court also held that even if evidence of prior drug use might be relevant to prove any of those elements in a different case, it was not admissible in this case be-

cause none of those material facts were disputed. 38 Kan. App. 2d at 690-93.

After examining the arguments raised regarding the admission of the evidence of Boggs' prior drug use, we conclude that the Court of Appeals correctly applied a de novo standard on appeal—though not necessarily for the reason given. The key issue as to the admissibility of Boggs' past marijuana use in this case turns on legal questions regarding materiality—whether intent, knowledge, or absence of mistake or accident are material facts in a possession case and, if so, whether those material facts were actually in dispute here. *Vasquez* and *Reid* explained that both of these questions are to be reviewed under a de novo standard. *Vasquez*, 287 Kan. at 50; *Reid*, 286 Kan. at 505. Thus, we conclude that the Court of Appeals applied the correct de novo standard of review regarding the admissibility of the defendant's past use of marijuana.

III. Did the district court err by admitting evidence of the defendant's prior drug use to prove intent, knowledge, or absence of mistake or accident?

The district court did not analyze the question of admissibility of defendant's prior marijuana use under the provisions of K.S.A. 60-455. Instead, in ruling on Boggs' motion in limine to exclude this evidence, the district court determined that prior Kansas case law supported admissibility of instances of prior drug use in nonexclusive possession cases to prove intent, knowledge, or absence of mistake or accident. The district court also concluded that nonexclusive possession cases provided "one of the exceptions to the general rule that prior crimes or wrongs [are] not admissible in court."

The district court partly based its reasoning on PIK Crim. 3d 67.13-D, which states that factors to be considered in nonexclusive possession cases include a "defendant's previous participation in the sale of a controlled substance" and a "defendant's use of controlled substances." The court later provided a modified version of this instruction to the jury, listing only the factors that the court found to be relevant to the case at hand. Among these factors was the defendant's prior "use of [a] controlled substance."

The district court's consideration of the admission of Boggs' statement regarding his previous marijuana use was similar to that used by our courts prior to *Gunby*, where the courts would admit evidence of prior crimes or civil wrongs independently of K.S.A. 60-455. See *State v. Bly*, 215 Kan. 168, 176, 523 P.2d 397 (1974), *overruled on other grounds State v. Mims*, 220 Kan. 726, 556 P.2d 387 (1976) (stating that "where evidence disclosing another criminal offense has a direct bearing on and relation to the commission of the offense itself, it is admissible without a limiting instruction" because such evidence is "admissible independently of K.S.A. 60-455"). In *Gunby*, however, this court held "unequivocally" that "admissibility of any and all other crimes and civil wrongs evidence will be governed by K.S.A. 60-455." 282 Kan. at 56-57. Thus, *Gunby* held that there is always error when a district court "neglect[s] to apply the safeguards . . . outlined to any other crimes or civil wrongs evidence." 282 Kan. at 57.

In this case, while the trial court did not apply K.S.A. 60-455 in determining the admissibility of defendant's past marijuana use, it did give a limiting instruction to the jury on how such evidence was to be considered by the jury. This court has not indicated that a district court must state its findings on the record regarding the various safeguards required when considering the admission or exclusion of K.S.A. 60-455 evidence or that the failure to consider these safeguards requires automatic reversal. See *Gunby*, 282 Kan. at 57. Rather, *Vasquez* and *Reid* indicated that a district court's admission of evidence under K.S.A. 60-455 may be upheld on review even if its rationale was in some way erroneous if an appellate court determines that the evidence was otherwise admissible under the statute. See *Vasquez*, 287 Kan. at 51-53; *Reid*, 286 Kan. at 509-12. Thus, we must determine whether the evidence of Boggs' previous marijuana use was admissible under K.S.A. 60-455.

In order to sustain a conviction for possession of marijuana under K.S.A. 65-4162, the State was required to prove (1) that the defendant possessed marijuana (2) intentionally (3) on the date and at the place alleged in the complaint. To establish that Boggs was guilty of possession of drug paraphernalia under K.S.A. 65-4152, it was the State's burden to prove (1) that the defendant knowingly

possessed drug paraphernalia (2) with the intent to use the drug paraphernalia to introduce marijuana into the body (3) on the date and at the place alleged in the complaint. See also PIK Crim. 3d 67.13 (possession of narcotics and other stimulants); PIK Crim. 3d 67.17 (possession of drug paraphernalia).

Although intent is an element of both possession of marijuana and possession of drug paraphernalia, it does not necessarily follow that evidence of intent is always *material* in a particular case. Rather, this court has explained that

" 'materiality,' for purposes of K.S.A. 60-455, contemplates a fact which has a legitimate and effective bearing on the decision of the case *and is in dispute*. If the fact is obvious from the mere doing of an act, or if the fact is conceded, evidence of other crimes to prove that fact should not be admitted because it serves no purpose to justify whatever prejudice it creates." (Emphasis added.) *State v. Faulkner*, 220 Kan. 153, 156, 551 P.2d 1247 (1976) (citing 31A C.J.S. Evidence §§ 159, 166 [1964]).

The *Faulkner* court further clarified that although " 'an evidential fact [may] be relevant under the rules of logic, it is not material unless it has a legitimate and effective bearing on the decision of the ultimate facts in issue.' [Citation omitted.]" 220 Kan. at 156.

The State argues that Boggs' prior use of marijuana was relevant in this case to prove the intent element in both charges because intent is always a material fact in possession cases. In particular, the State asserts that this court has long permitted evidence of prior drug use to be admitted in cases involving possession of drugs or drug paraphernalia to prove the defendant's intent to use drugs, the defendant's knowledge that the particular substance possessed consisted of drugs or was drug-related, or to prove an absence of mistake or accident in possessing the contraband material.

The State correctly points out that this court has previously held that evidence of prior crimes or civil wrongs may be admissible under K.S.A. 60-455 to prove intent, knowledge, or absence of mistake or accident in cases involving possession of drugs or drug paraphernalia. The State fails to recognize, however, that in all cases where this court has held such evidence to be admissible on these bases, the question of the defendant's intent, knowledge, or claim of mistake or accident was a disputed material fact in issue.

In *Faulkner*, for example, two police officers observed a vehicle enter the parking lot of a restaurant in Salina. The defendant was the passenger in the vehicle. When the vehicle stopped in the parking lot, the defendant exited and began to walk toward the restaurant; the defendant ignored the officers' requests to stop until he reached the restaurant entrance. One of the officers approached the vehicle to talk with the driver and observed a hypodermic needle and a small plastic bag of pills on the floorboard of the passenger side. Another bag of pills—determined later to be amobarbital—was found in the glove compartment. The defendant was charged with and subsequently convicted of possession of amobarbital with intent to sell.

On appeal, the defendant claimed that the district court erred when it admitted a journal entry of judgment of a prior conviction for possession of a controlled substance. The district court had determined that this evidence was admissible for the limited purposes of showing intent, knowledge, or absence of mistake or accident.

Considering Faulkner's arguments on appeal, this court noted that evidence of the defendant's prior conviction "was offered essentially to prove the specific intent required for 'possession.' " 220 Kan. at 157. The *Faulkner* court defined "possession" as "having control over a place or thing with knowledge of and the intent to have such control." 220 Kan. 153, Syl. ¶ 3. The court found in the case before it that although the defendant's control of the amobarbital was demonstrated by circumstantial evidence and witness testimony, the "[i]ntent to exercise control over the amobarbital was *disputed*." (Emphasis added.) 220 Kan. at 157.

Turning to the rationale provided by the district court for the admission of the defendant's prior drug conviction, *Faulkner* explained that "[w]hether the appellant had the specific intent required to prove possession was a *highly material fact substantially in issue*." (Emphasis added.) 220 Kan. at 157. The court noted that "[b]oth knowledge and absence of mistake are factors bearing on intent." 220 Kan. at 156. While knowledge "signifies awareness and is a requirement for 'possession,' " absence of mistake "simply denotes an absence of honest error." 220 Kan. at 156 (citing Slough,

*Other Vices, Other Crimes: An Evidentiary Dilemma*, 20 Kan. L. Rev. 411 [1972]).

The *Faulkner* court also held that it was not necessary to introduce evidence demonstrating the similarity of the defendant's previous conviction to the crime charged to prove intent because "[w]hen identity is conceded," a previous drug-related conviction may raise "a reasonable inference" that a defendant is "familiar with controlled substances and [has] knowledge of and intend[s] to exercise control over" controlled substances. 220 Kan. at 157. Nevertheless, the court noted that although there need not be a showing of the "specific facts and circumstances involved in the prior offense," similarity of *offenses* continued to be a key factor in a court's assessment of relevance. 220 Kan. at 157.

In *State v. Bullocks*, 2 Kan. App. 2d 48, 574 P.2d 243, *rev. denied* 225 Kan. 846 (1978), the Court of Appeals expanded the discussion in *Faulkner* relating to intent to hold that evidence of prior drug use is always a factor that may be considered in cases that involve the nonexclusive possession of contraband. The *Bullocks* court explained at some length:

" 'Possession' of marijuana is having control over the marijuana with knowledge of, and intent to have, such control. Possession and intent, like any element of a crime, may be proved by circumstantial evidence. [Citation omitted.] Possession may be immediate and exclusive, jointly held with another, or constructive as where the drug is kept by the accused in a place to which he has some measure of access and right of control. [Citation omitted.]

"When a defendant is in nonexclusive possession of premises on which drugs are found, the better view is that it cannot be inferred that the defendant knowingly possessed the drugs unless there are other incriminating circumstances linking the defendant to the drugs. [Citation omitted.] Such parallels the rule in Kansas as to a defendant charged with possession of drugs in an automobile of which he was not the sole occupant. [Citation omitted.] Incriminating factors noted in *Faulkner* are a defendant's previous participation in the sale of drugs, his use of narcotics, his proximity to the area where the drugs are found, and the fact that the drugs are found in plain view. Other factors noted in cases involving nonexclusive possession include incriminating statements of the defendant, suspicious behavior, and proximity of defendant's possessions to the drugs." 2 Kan. App. 2d at 49-50.

The PIK instruction relied on by the district court in this case—PIK Crim. 3d 67.13-D—contains almost identical language to this

discussion in *Bullocks*. Importantly for this case, *Bullocks* neither cited nor discussed K.S.A. 60-455.

In more recent decisions, this court has explained that " '[t]he crucial distinction in admitting other crimes evidence under K.S.A. 60-455 on the issue of intent is not whether the crime is a specific or general intent crime but whether the defendant has claimed that his or her acts were innocent.' " *State v. Dotson*, 256 Kan. 406, 413, 886 P.2d 356 (1994) (quoting *State v. Synoracki*, 253 Kan. 59, Syl. ¶ 12, 853 P.2d 24 [1993]). When the possession of illegal substances is susceptible to two interpretations—one innocent and one criminal—then "the intent with which the act was committed becomes the critical element in determining its character. [Citation omitted.]" *State v. Graham*, 244 Kan. 194, 196, 768 P.2d 259 (1989). However, when a defendant does not assert that his or her actions were innocent but rather prevents some other defense, there is no reason to admit evidence of other crimes or civil wrongs to prove intent. See *Dotson*, 256 Kan. at 413.

In *Graham,* the defendant was apprehended carrying several bags of cocaine and one bag of marijuana in the pockets of his jacket and cocaine residue in a plastic packet in his jeans. A search of the car that the defendant was driving revealed additional bags of methamphetamine and marijuana, as well as marijuana cigarettes. He was charged with possession of cocaine, marijuana, and methamphetamine. At trial, Graham asserted as defenses that a friend had borrowed his jacket the day before he was arrested; that he was wearing a friend's pants because his had been soiled; and that the vehicle he drove did not belong to him.

This court found that because Graham had provided innocent explanations at trial for why he possessed the drugs in question, his intent was a "critical element" in assessing his guilt. 244 Kan. at 196. In fact, the court noted that "Graham's intent was the *sole issue*" in the case. (Emphasis added.) 244 Kan. at 198. The court therefore held that the evidence of the defendant's prior drug crimes was admissible under K.S.A. 60-455 to show "knowledge, intent, and absence of mistake or accident." 244 Kan. at 198.

A review of these cases demonstrates that all of the cases where the court found that evidence of other wrongful acts was admissible

to prove intent involved attempts by the defendants to provide an innocent explanation for his or her possession of contraband. See *Graham*, 244 Kan. at 195-96; *Faulkner*, 220 Kan. at 156-57. None of these cases involve a situation where the defendant's principle defense involved disputing possession of the drugs in question; instead, the defense provided in each was that although drugs were found in the defendant's possession, the defendant did not *intend* to possess those substances.

In *Dotson*, where the defendant did not attempt to provide an innocent explanation for his actions, the court held that evidence of prior crimes was not admissible because intent was not raised as an issue in the case. 256 Kan. at 413. In other words, intent was not disputed. See *Faulkner*, 220 Kan. at 156-57; see also *State v. Davidson*, 31 Kan. App. 2d 372, Syl. ¶ 4, 65 P.3d 1078, *rev. denied* 276 Kan. 971 (2003) (evidence of other crimes or civil wrongs inadmissible to prove intent when the defendant provides a blanket denial that an event ever occurred).

In this case, Boggs' only defense was that he did not possess the glass pipe found under the passenger seat in Hockett's father's pickup truck. Boggs did not dispute the fact that the pipe was drug paraphernalia or that the pipe contained a small amount of marijuana residue (although he did argue at trial that the residue was not substantial enough to give rise to a conviction). Instead, as the Court of Appeals noted in its opinion in this case, Boggs completely denied ever having possession of the pipe *at all*. See *Boggs*, 38 Kan. App. 2d at 690 (citing *Davis*, 31 Kan. App. 2d at 383).

Because Boggs' only defense was that he did not possess the glass pipe, the element of intent—and the related elements of knowledge and absence of mistake or accident—were not at issue in this case. As the Court of Appeals opined below:

"[T]he State's argument raises several questions. First, what 'intent' was tended to be proved? Boggs' defense was that he neither possessed the marijuana nor the drug paraphernalia. Unlike *Graham*, Boggs did not assert that the charged crimes in question were done innocently. As a result, the issue of intent was not in dispute. Second, what 'knowledge' was tended to be proved? The question to be answered was as follows: Did Boggs possess the marijuana and drug paraphernalia? No claim was made that Boggs may have possessed the marijuana and drug paraphernalia without knowledge that he had it. Third, what 'absence of mistake or accident'

was a question in this case? No one contended that Boggs possessed the marijuana and the drug paraphernalia without knowing what the items were or possessed the items by mistake." 38 Kan. App. 2d at 692.

We agree and find the reasoning of the Court of Appeals sound. The issues of intent, knowledge, or absence of mistake or accident were not material to the resolution of Boggs' case, as the only issue in dispute was whether Boggs ever possessed the pipe and its contents at all.

The State cites two recent unpublished opinions of the Court of Appeals that both held that evidence of other crimes or civil wrongs is admissible to prove possession in nonexclusive possession cases. See *State v. Vogt*, No. 96,660, unpublished opinion filed December 14, 2007; *State v. Saunders*, No. 94,672, unpublished opinion filed May 4, 2007, *rev. denied* 284 Kan. 950 (2007). A review of these two cases, however, demonstrates that they are inconsistent with this court's case law holding that intent evidence is only material when intent is at issue in the case.

It is unclear in *Vogt*, which involved a question of nonexclusive possession of drugs in an automobile similar to that raised in this case, whether the defendant contended that he did not intend to possess the contraband or that he did not possess the drugs at all. *Vogt* is therefore of little use to this case, which turns on whether the intent was a material fact in dispute.

*Saunders* involved nonexclusive possession of drugs found in a residence. The panel in that case concluded that the defendant did not "categorically deny the allegations" of possession because the defendant claimed to have "no knowledge" of the presence of the drugs in the residence. Slip op. at 8. The court therefore concluded that knowledge was a material fact in dispute, and evidence of prior drug use could be introduced to refute the defendant's claims that he did not know about the drugs in question. Slip op. at 8.

The problem with the court's analysis in *Saunders* is that it fails to appreciate that "knowledge" in the context of drug possession may have different connotations. An assertion that a defendant did not *know* about the drugs in question—as the defendant made in *Saunders*—is a much different assertion than a claim that the defendant did not *know* a particular substance consisted of drugs or

was drug-related. While evidence of prior drug use might be relevant to prove the latter of these assertions, there is absolutely no logical connection between prior drug use and the first assertion, *i.e.*, no knowledge of drugs being present. If a person asserts that he or she does not know that there are drugs in a residence (or in this case, under the seat in a vehicle), prior use of drugs neither proves nor disproves the validity of that assertion.

A review of the record and arguments in this case demonstrates that the only question at issue was the identity of the individual who possessed the pipe. The evidence of Boggs' prior drug use admitted at trial indicated that he had smoked marijuana about a month before he was arrested for the current offense. This evidence does not raise any inference or provide any details that would lead to a conclusion that Boggs possessed the glass pipe at issue in this case. The only conceivable connection between the two events is an assumption that because Boggs used marijuana in the past, it was probable that he would use it again in the future and thus possess the pipe. This is propensity evidence and is precisely what K.S.A. 60-455 was designed to prevent. See *State v. Gunby*, 282 Kan. 39, 47-48, 144 P.3d 647 (2006).

The instruction provided in this case states that in a nonexclusive possession case, factors including other crimes or civil wrongs of the defendant may be admitted to establish the defendant "knowingly possessed the controlled substance" charged in the information or complaint. In the past, factors such as a defendant's prior drug use or participation in the sale of drugs—evidence of other crimes or civil wrongs that fall squarely within the realm of K.S.A. 60-455—have been admitted both under the guise of that statute or independent from the statutory mandates. Compare *Faulkner*, 220 Kan. at 155-57 (discussing K.S.A. 60-455), with *Bullocks*, 2 Kan. App. 2d at 49-50 (admitting evidence of other crimes or civil wrongs without ever discussing K.S.A. 60-455). The ambivalence existing in this area of law is exemplified by the trial court's admission of the defendant's prior drug use without employing the safeguards of K.S.A. 60-455, yet giving a limiting instruction. *Gunby* abolished this ambiguity, making it clear that before any evidence of a defendant's other crimes or civil wrongs can be ad-

mitted, the court must apply the K.S.A. 60-455 safeguards. See 282 Kan. at 57.

Finally, we observe that although PIK Crim. 3d 67.13-D, which was applied in a modified form in this case, states that a jury may consider a defendant's use of a controlled substance as one of the factors in a nonexclusive possession case, the pattern instruction fails to adequately summarize the nuances of this court's case law relating to K.S.A. 60-455 evidence. Our decision in *Gunby* specifically bars the admission of any evidence of other crimes or civil wrongs independent of K.S.A. 60-455 or some other statutory basis. While a defendant's use of a controlled substance may be admitted—subject to the requirements of K.S.A. 60-455—when such evidence is relevant to prove a disputed material fact, the defendant's use of a controlled substance is not a factor that is automatically admissible as an exception to the specific mandates of K.S.A. 60-455. To the extent that PIK Crim. 3d 67.13-D suggests otherwise, the instruction is disapproved. To the extent that past appellate cases in this state suggest otherwise, they are also disapproved.

IV. Was the erroneous admission of the evidence of the defendant's prior marijuana use harmless?

The conclusion that the evidence of Boggs' previous drug use was inadmissible under K.S.A. 60-455 does not automatically lead to reversal. Instead, we must determine, as the Court of Appeals did in this case, whether the admission of that evidence was harmless under K.S.A. 60-261, which provides:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice."

Other than his prior drug use, the only evidence linking Boggs to the glass pipe consisted of Captain Allcock's testimony that he smelled the odor of marijuana on Boggs' clothing and Hockett's extensive testimony at trial. Hockett was the only other occupant of the pickup truck where the pipe was found, and that truck be-

longed to Hockett's father; both of these facts place Hockett's credibility in question. Under the facts of this case, the evidence that Boggs had used marijuana on a prior occasion was inadmissible, but it was also extremely prejudicial. We cannot discount the very real possibility that the jury was swayed by this prior drug experience and concluded on the basis of the improperly admitted evidence that the defendant was guilty of the crime charged solely based on his previous behavior. In short, we do not believe that the erroneous admission of defendant's prior drug use was harmless.

The State argues that the Court of Appeals' harmless error analysis was improper because it required the court to reweigh the witnesses' credibility. Specifically, the State argues that the Court of Appeals discounted Hockett's incriminating testimony due to his interests as the driver of a truck belonging to his father—and therefore potential bias—concerning the outcome of Boggs' case. This claim fails to recognize that a reviewing court considering a question of harmless error is required to make a determination as to whether the evidence admitted had any likelihood of changing the results at trial. See *State v. Gonzalez*, 282 Kan. 73, 99-100, 145 P.3d 18 (2006). This determination is different from a question of whether there is sufficient evidence to sustain a conviction because considerations of harmless error necessarily involve some weighing of the evidence presented against the court's confidence that the verdict is consistent with substantial justice. See K.S.A. 60-261.

Applying this same harmless error standard, we conclude that the admission of Boggs' prior use of marijuana had a real likelihood of changing the result of the trial. The district court's error in admitting the evidence was not harmless.

The decision of the Court of Appeals reversing the district court on the issues subject to our grant of review is affirmed, the district court is reversed, and the case is remanded with directions to the district court for a new trial consistent with this opinion.