NOT DESIGNATED FOR PUBLICATION

No. 116,798

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT SMITH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Geary District Court; RYAN W. ROSAUER, judge. Opinion filed August 31, 2018. Reversed and remanded with directions.

*Mackenzie Maki*, legal intern, and *Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Tony Cruz*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., PIERRON and BUSER, JJ.

PER CURIAM: During a home visit, Robert Smith's probation officer and several members of the Drug Task Force found marijuana in plain view in Smith's living space at his grandmother's home. A jury convicted him of marijuana possession. On appeal, he challenges the sufficiency of the evidence, but when viewed in the light most favorable to the State, a reasonable fact-finder could conclude that he was guilty beyond a reasonable doubt of the offense. He also argues that the use of the word "should" in the burden of proof jury instruction was erroneous. Nevertheless, in *State v. Allen*, 52 Kan. App. 2d 729, 733, 372 P.3d 432 (2016), *rev. denied* 306 Kan. 1320 (2017), this court held that the

1

contested instruction was legally appropriate. Finally, Smith argues that the trial court erred in admitting evidence of his prior drug use. We conclude that the trial court erred by failing to perform a K.S.A. 2016 Supp. 60-455 analysis. Thus, the only purpose of the evidence would be to show that Smith had a propensity for marijuana use, which is exactly what K.S.A. 2016 Supp. 60-455 prohibits. Moreover, given the minimal and circumstantial nature of the evidence, this error was not harmless. Therefore, we reverse Smith's marijuana conviction and remand for a new trial.

Robert Smith reported to his probation officer Valerie Allen in October 2015. He submitted a negative uranalysis (UA) test. Then, Smith, Allen, Allen's supervisor, and four members of the Drug Task Force went to Smith's residence for a routine home visit.

Smith resided at his grandmother's house. Smith's cousin, Dominique Smith, and several children also lived in the house. During the search, Smith first took the officers to an upstairs bedroom. Nevertheless, the room contained children's clothing and there was nothing that appeared to be Smith's in the room. He then told the officers that he also stayed in the basement of the house. Dominique explained at trial that he and Smith would rotate between the upstairs room and the basement.

The basement had a common area and a bedroom. A couch and coffee table sat in the common area. One detective described the basement as "filled with a lot of clutter." This included bags of clothing, boxes with documents, and other things that people generally store in the basement strewn throughout. The detective testified that the items did not appear to belong to a single person.

Allen smelled marijuana when she descended into the basement. She opened a black backpack on the floor of the basement common area and found a baggie that smelled like marijuana and appeared to have marijuana residue in it. Nothing identified the backpack as Smith's. A detective found a marijuana roach on the coffee table near the backpack. One way of using marijuana is to empty the tobacco out of a cigar and fill it

2

with marijuana. After this item is smoked, the remaining tip is called a roach. Upon further searching, a detective found a small plastic sandwich bag containing marijuana under the coffee table. An unopened letter addressed to Smith was sitting in a stack of mail on top of the coffee table.

In the basement bedroom, a detective found two plastic grocery bags with the corners torn off on the floor. He explained that sometimes drugs are packaged in the corners of plastic bags. He also found a gallon-sized Ziploc bag with marijuana residue on top of an armoire in the room. There was either some paperwork or a letter on a card table in that room, but it did not have Smith's name on it.

Smith was arrested for possession of marijuana. On his way out of the house, Smith told his grandmother something to the effect of "don't worry, there's nothing else in the house." The State ultimately charged Smith with one count of possession of marijuana and one count of possession of drug paraphernalia.

At trial, the State introduced evidence that Smith had tested positive for marijuana in prior UAs. Smith objected, and the State argued that Smith opened the door to the evidence by asking about the negative UA taken the day of the home visit. The trial court overruled the objection.

The jury found Smith guilty of marijuana possession. Nevertheless, the jury found Smith not guilty of possession of drug paraphernalia. Smith moved for a new trial which the trial court denied. The trial court sentenced Smith to 12 months' probation with an underlying prison sentence of 15 months.

*Was There Sufficient Evidence to Support Smith's Conviction?*

Smith first argues that the State presented insufficient evidence to support his conviction for possession of marijuana and that the jury had to engage in impermissible inference stacking to return a guilty verdict.

When the sufficiency of evidence is challenged in a criminal case, an appellate court reviews all the evidence in the light most favorable to the State. A conviction will be upheld if the court is convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt based on that evidence. In determining whether there is sufficient evidence to support a conviction, the appellate court generally will not reweigh the evidence or reassess witness credibility. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016). It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

"'Possession' of marijuana is having control over the marijuana with knowledge of, and intent to have, such control. Possession and intent, like any element of a crime, may be proved by circumstantial evidence." *State v. Bullocks*, 2 Kan. App. 2d 48, 49, 574 P.2d 243 (1978). Possession may be constructive "where the drug is kept by the accused in a place to which he has some measure of access and right of control." 2 Kan. App. 2d at 49-50. "[W]hen a defendant is in *nonexclusive* possession of the premises on which illegal drugs are found, the mere presence of or access to the drugs, standing alone, is insufficient to demonstrate possession absent other incriminating circumstances." *State v. Rosa*, 304 Kan. 429, 434, 371 P.3d 915 (2016). These circumstances include the fact that the drugs were in plain view, a defendant's proximity to the area where the drugs were found, the proximity of a defendant's belongings to the drugs, and a defendant's suspicious behavior or incriminating statements. 304 Kan. at 434; *State v. Anthony*, 242 Kan. 493, 502-03, 749 P.2d 37 (1988).

4

Here, the evidence is not overwhelming, but when viewed in the light most favorable to the State, it is sufficient. Many of the incriminating circumstances listed in the caselaw were present. Smith told officers he stayed in the basement and a letter addressed to him was found there. A number of marijuana-related items, including a bag with marijuana, empty bags with marijuana residue, and roaches, were in plain view in the basement. Further, Smith's statement to his grandmother that there was nothing else in the house could be interpreted to mean that he knew what drugs were in the house and that the police had found them all. A reasonable juror could consider this an incriminating statement. Although the evidence is circumstantial, it does not require the inference stacking as Smith asserts. Each piece of evidence listed has been accepted as an appropriate incriminating circumstance for juries to consider when deciding a nonexclusive possession case. As a result, sufficient evidence supports Smith's conviction.

*Did the Trial Court Err in Admitting Evidence?*

Smith argues that the trial court erred when it allowed the State to introduce evidence of his prior positive UAs. He asserts that the evidence was admitted in violation of K.S.A. 2016 Supp. 60-455, which provides that evidence that a person committed a prior crime or civil wrong is inadmissible to prove that person's propensity to commit the charged crime. K.S.A. 2016 Supp. 60-455(a). The State replies that it did not introduce the evidence to prove propensity. Rather, the State argues that the evidence was properly admitted to allow it to rebut Smith's evidence of the negative UA.

K.S.A. 2016 Supp. 60-455 provides in relevant part:

> "(a) Subject to K.S.A. 60-447, and amendments thereto, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion.

5

"(b) Subject to K.S.A. 60-445 and 60-448, and amendments thereto, such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The list of material facts provided in subsection (b) of the statute is exemplary and not exclusive. *State v. Gunby*, 282 Kan. 39, 56, 144 P.3d 647 (2006).

"Generally, when considering a challenge to a district judge's admission of evidence, an appellate court must first consider relevance." 282 Kan. at 47. Once relevance is established, this court must apply the rules governing the admission and exclusion of evidence. Depending on the rule in question, this review is either as a matter of law or in the exercise of the district judge's discretion. 282 Kan. at 47.

Here, the State argued that the evidence of positive UAs should be admitted because Smith "opened the door" by introducing evidence of his negative UA on the day of the search. Smith argued that the evidence was not relevant. The trial court ruled that Smith opened the door to the evidence and that it was relevant to show that he had previously engaged in marijuana use.

The problem with the trial court's ruling on this issue is that it did not perform the K.S.A. 2016 Supp. 60-455 analysis. Our Supreme Court examined a similar situation in *State v. Boggs*, 287 Kan. 298, 197 P.3d 441 (2008).

In *Boggs*, police stopped a truck for suspicion of driving under the influence of alcohol. Matthew Hockett was driving and Charles Boggs was his passenger. Police found a glass pipe with marijuana residue under the passenger seat in which Boggs had been sitting. Hockett said the pipe belonged to Boggs, but Boggs denied that it was his. Nevertheless, the police smelled burnt marijuana on Boggs' clothing and thought his eyes looked dilated. The police asked Boggs when he last used marijuana, and Boggs

6

answered that it had been about a month before the stop. The State charged Boggs with felony possession of marijuana and misdemeanor possession of drug paraphernalia. At trial, Hockett testified that the evening of the stop, Boggs had shown him and several other people the pipe.

Before the trial, Boggs filed a motion in limine asking the court to prevent the State from admitting his statement that he used marijuana about a month before the stop. Boggs argued that the evidence was barred by K.S.A. 60-455 because it would be admitted solely for the purpose of showing he had a propensity for using drugs. The trial court denied the motion, holding that in nonexclusive possession cases prior use of drugs could be considered by the jury. Nevertheless, the court did instruct the jury that the evidence could only be considered "'for the purpose of proving the Defendant's intent, knowledge and absence of mistake or accident in this case.'" 287 Kan. at 303. Boggs' primary defense at trial was that he did not possess the pipe. The jury found Boggs guilty on both counts. Boggs appealed.

This court reversed Boggs' convictions, holding that the evidence of Boggs' prior marijuana use was inadmissible under K.S.A. 60-455. 287 Kan. at 304. Our Supreme Court affirmed. 287 Kan. at 300. In its analysis, our Supreme Court noted that "[t]he district court did not analyze the question of admissibility of defendant's prior marijuana use under the provisions of K.S.A. 60-455." 287 Kan. at 309. The court cited *Gunby*, 282 Kan. 39, in which it "held that there is always error when a district court 'neglect[s] to apply the safeguards . . . outlined to any other crimes or civil wrongs evidence.'" 287 Kan. at 310 (quoting *Gunby*, 282 Kan. at 57). Nevertheless, the court noted that such an error does not require automatic reversal. 287 Kan. at 310. Rather, "a district court's admission of evidence under K.S.A. 60-455 may be upheld on review even if its rationale was in some way erroneous if an appellate court determines that the evidence was otherwise admissible under the statute." 287 Kan. at 310.

7

The court then proceeded to "determine whether the evidence of Boggs' previous marijuana use was admissible under K.S.A. 60-455." 287 Kan. at 310. The State argued that the evidence was relevant to prove intent, asserting that Kansas courts have long permitted evidence of prior drug use to prove intent, knowledge, or absence of mistake or accident. The court noted that the State failed to recognize that in the cases where prior drug use was admissible for those reasons, "the question of the defendant's intent, knowledge, or claim of mistake or accident was a disputed material fact in issue." 287 Kan. at 311. Then, the court drew a bright-line rule distinguishing between two types of cases: cases where the defendant "provide[s] an innocent explanation for his or her possession of contraband" and cases where the defendant "disput[es] possession of the drugs in question . . . ." 287 Kan. at 314-15.

For example, in one case police apprehended the defendant and found drugs in his jacket pockets, pants pocket, and vehicle. As a defense, the defendant said that he borrowed the jacket, pants, and vehicle from others. Because the defendant "had provided innocent explanations at trial for why he possessed the drugs in question, his intent was a 'critical element' in assessing his guilt." 287 Kan. at 314 (discussing *State v. Graham*, 244 Kan. 194, 768 P.2d 259 [1989]). The court contrasted this with Boggs' situation. Boggs' sole defense was that he did not possess the glass pipe—he "completely denied ever having possession of the pipe *at all*." 287 Kan. at 315.

The court opined that "[i]f a person asserts that he or she does not know that there are drugs in a residence (or in this case, under the seat in a vehicle), prior use of drugs neither proves nor disproves the validity of that assertion." 287 Kan. at 317. The only conceivable inference to be drawn from Boggs' prior drug use "an assumption that because Boggs used marijuana in the past, it was probable that he would use it again in the future and thus possess the pipe." 287 Kan. at 317. The court held that "[t]his is propensity evidence and is precisely what K.S.A. 60-455 was designed to prevent." 287 Kan. at 317.

8

This case is similar to *Boggs*. Smith did not attempt to provide an innocent explanation for the presence of marijuana in his shared living space. Rather, he disputed possession of the marijuana. The only purpose for the State to introduce Smith's positive UAs would be to create an inference that he used marijuana in the past and was likely to use it again in the future. Under *Boggs*, we conclude that admission of the positive UAs was barred by K.S.A. 2016 Supp. 60-455.

After concluding that evidence of Boggs' prior drug use was barred from admission by K.S.A. 60-455, the *Boggs* court had to determine whether the erroneous admission of the evidence was harmless. K.S.A. 2016 Supp. 60-261 provides:

> "Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

"[T]he harmless error analysis under K.S.A. 60-261 requires us to determine whether there is a reasonable probability that the error will or did affect the outcome of the trial in light of the entire record." *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013). The party benefitting from the error carries the burden of demonstrating harmlessness. 296 Kan. at 895.

The *Boggs* court held that admission of Boggs' prior drug use was not harmless. 287 Kan. at 319. In coming to this conclusion, the court reviewed the evidence against Boggs: police smelled marijuana on Boggs' clothing and Hockett's testimony that the pipe belonged to Boggs. The court noted that Hockett's credibility was questionable because he was the only occupant in the truck and because the truck belonged to his father. 287 Kan. at 318-19. Given these facts, the court thought that evidence of Boggs' prior marijuana use was not only "inadmissible, but it was also extremely prejudicial."

9

287 Kan. at 319. The court concluded that there was a "very real possibility that the jury was swayed by this prior drug experience and concluded on the basis of the improperly admitted evidence that the defendant was guilty of the crime solely based on his previous behavior." 287 Kan. at 319.

The State argued that the court's "harmless error analysis was improper because it required the court to reweigh the witnesses' credibility." 287 Kan. at 319. The court distinguished the harmless error analysis from the sufficient evidence analysis, where an appellate court is not permitted to reweigh evidence or reassess witness credibility. In performing a harmless error analysis, an appellate court "is required to make a determination as to whether the evidence admitted had any likelihood of changing the results at trial." 287 Kan. at 319. Such a determination "necessarily involve[s] some weighing of evidence presented against the court's confidence that the verdict is consistent with substantial justice." 287 Kan. at 319.

Here, there is a reasonable probability that the error affected the outcome of the trial. Smith told officers he resided in the basement, but there was no testimony as to when he last stayed there. In fact, the testimony showed that every time Smith's probation officer had been to his grandmother's house to conduct a home visit, he was not there. Smith initially told officers that he stayed in the upstairs bedroom. They did not believe him because they did not see anything in the room that appeared to be his. Nevertheless, the only personal item of Smith's in the basement was an unopened piece of mail sitting in a stack of mail addressed to others. Based on this evidence, the jury could have formed a reasonable doubt as to whether Smith spent much time in the basement. Additionally, Smith's cousin Dominique also resided in the house. Dominique testified that a couple of months after the search, he was on probation for a marijuana charge. The jury could have believed that the marijuana belonged to Dominique, but have been swayed by the evidence of Smith's prior marijuana use. The jury's split verdict, finding Smith guilty of marijuana possession but not guilty of drug paraphernalia possession, also shows that the case may have been a close call. The evidence tying Smith to the paraphernalia was the

same evidence that tied him to the marijuana. It is possible that evidence of Smith's prior marijuana use swayed the jury toward a guilty verdict on the marijuana possession charge.

In this case, there was even less evidence tying Smith to the marijuana than there was in *Boggs*. Both Smith and Dominique stayed in the basement at their grandmother's house. In *Boggs*, both Boggs and Hockett were found in Hockett's father's truck. Nevertheless, Boggs smelled like marijuana which indicated to officers that he used it. Smith, on the other hand, tested negative for marijuana the day of the search. Smith's probation officer testified that marijuana can stay in a person's system for 30 to 45 days. Additionally, in *Boggs*, Hockett testified that the pipe belonged to Boggs. In this case, there was no testimony that the marijuana belonged to Smith. In *Boggs*, there was more evidence to counteract the error of admitting Boggs' prior drug use than in this case. Therefore, we conclude that admission of Smith's prior positive UAs was not harmless error.

As a final note, the State argues that Smith "conveniently fails to address how a negative urinalysis test on the day of his home visit was relevant to prove he did not possess the marijuana found in his residence." Nevertheless, the State did not object to the evidence at trial. Moreover, the State did not file a cross-appeal on the issue of whether the evidence was admissible. Therefore, any arguments regarding the negative UA cannot be considered. *Cooke v. Gillespie*, 285 Kan. 748, 755, 176 P.3d 144 (2008). If the State believed that the evidence was not relevant, it should have objected to the evidence. Instead, the State tried to rebut it with inadmissible propensity evidence that reasonably would have affected the jury's verdict.

*Was the Jury Instruction on Burden of Proof Erroneous?*

Smith argues that the jury's instruction on burden of proof was erroneous because it negated the jury's power of nullification. The portion of the instruction at issue provides:

> "The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of any of the claims required to be proved by the State, you should find the defendant guilty."

In his proposed instructions and at trial, Smith requested that the word "should" be replaced with the word "may." Nevertheless, the trial court rejected his request.

The standard of review is multi-tiered.

> "For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

Smith preserved the issue by raising it below, and this court has jurisdiction to address it.

12

In *Allen*, 52 Kan. App. 2d at 733, this court held that the use of "should" in the given instruction was legally appropriate. The *Allen* court stated "'unlike the words must, shall, and will, the word should does not express a mandatory, unyielding duty or obligation; instead, it merely denotes the proper course of action and encourages following the advised path.'" 52 Kan. App. 2d at 735 (quoting *State v. Hastings*, No. 112,222, 2016 WL 852857, at *4 [Kan. App. 2016]). Smith acknowledges the holding in *Allen*, and argues that it is wrongly decided. Nevertheless, the reasoning in *Allen* is persuasive and there is no reason to depart from it.

Smith also argues that *Allen* is distinguishable. In *Allen*, the defendant did not object to the instruction, limiting the court's review to whether the instruction was clearly erroneous. 52 Kan. App. 2d at 733. Here, Smith objected to the instruction. Nevertheless, before determining whether the instruction was clearly erroneous, the *Allen* court first had to examine whether it was legally appropriate. The clearly erroneous determination was a different stage of the review. Therefore, the distinction is immaterial for determining whether the instruction was legally appropriate.

Because Smith does not contend that the evidence was sufficient to support the instruction, the third part of the review is not at issue. The State was required to prove the crimes it alleged beyond a reasonable doubt, so the burden of proof instruction was factually appropriate.

If the trial court erred, the final part of this court's jury instruction review is determining whether the error was harmless. But because the instruction was legally and factually appropriate, the trial court did not err in giving it.

Reversed and remanded for a new trial.