No. 99,961

STATE OF KANSAS, *Appellee*, v. CHARLES LLOYD
HOLLINGSWORTH, III, *Appellant*.

(221 P.3d 1122)

Opinion filed December 11, 2009.

*Nancy Ogle*, of Ogle Law Office, L.L.C., of Wichita, argued the cause and was on the briefs for appellant.

*Jason E. Geier*, assistant district attorney, argued the cause, and *Chadwick J. Taylor*, district attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: This case is the third in a series of appeals by codefendants involved in the June 2006 killing of David Owen, an advocate for the homeless. For the contributions by Charles Lloyd Hollingsworth, III, he was convicted of felony murder and kidnapping. Our jurisdiction of his direct appeal is under K.S.A. 22-3601(b)(1), conviction of an off-grid crime.

The issues on appeal, and our accompanying holdings, are as follows:

1. Did the trial court err in concluding that statements Hollingsworth provided to the police during their investigation were voluntarily given? This issue was not preserved for appeal.

2. Did the trial court err in admitting evidence of Hollingsworth's outstanding warrant under K.S.A. 60-455 as proof of motive or intent? No.

Accordingly, we affirm.

## FACTS

Hollingsworth was convicted in July 2007 for felony murder and

kidnapping in association with the killing of David Owen. Two codefendants involved in the same incident, Kimberly Sharp and Carl Lee Baker, have also been convicted of first-degree murder; their convictions have been affirmed on appeal. See *State v. Sharp*, 289 Kan. 72, 210 P.3d 590 (2009); *State v. Baker*, 287 Kan. 345, 197 P.3d 421 (2008).

Owen was an advocate on homelessness issues and visited several homeless camps around Topeka during the summer of 2006. During these visits, he attempted to persuade the camp residents to call their families to reconcile past differences and possibly resume permanent living arrangements. To accomplish these goals, Owen carried a black satchel containing several cell phones and prepaid phone cards. He would hand out the phone cards at the camps and encourage the residents to call relatives.

In mid-June 2006, Owen visited a homeless camp by the Kansas River in Topeka where Hollingsworth, Kimberly Sharp, John Cornell, and Carl Lee Baker were living. These four individuals became noticeably agitated when Owen approached Baker and encouraged him to call home. Baker told Owen to leave; Owen threatened to call the police and reached into his satchel for a cell phone.

When Owen reached into his satchel, Hollingsworth grabbed Owen's hand and pulled it out of the bag. By then Owen was holding a cell phone. Hollingsworth jerked Owen's arm and knocked the phone to the ground. Hollingsworth slammed Owen to the ground, picked him up, and slammed him onto a bench.

As these events occurred, Sharp looked through Owen's satchel and found photographs of homeless camps that Owen apparently ransacked when the homeless individuals refused to live elsewhere. She started burning the photographs and other satchel items in a firepit.

Hollingsworth grabbed Owen and walked him outside the camp. Owen again threatened to call the police, and Hollingsworth grabbed a hatchet that had been stuck in a tree. Sharp followed Hollingsworth as he dragged Owen away.

Once outside the camp, Hollingsworth asked for a rope. Baker retrieved one from his tent and gave it to Cornell. When Cornell

approached Hollingsworth to deliver the rope, Owen was kneeling on the ground. Hollingsworth stood behind Owen holding the hatchet. Sharp told Cornell that they were going to tie up Owen and make him sleep outside with the mosquitoes.

Hollingsworth brought Owen back to the main camp with Owen's hands bound behind his back. The rope was tied around Owen's neck and back down to his hands. Hollingsworth sat Owen down on the bench and put a gag in Owen's mouth.

With this task accomplished, Hollingsworth and Baker sat down and rolled cigarettes. Taking the cigarettes with them, they grabbed the bound and gagged Owen and dragged him over the dike, across a field, and into a wooded area. Hollingsworth tied a rope over Owen's head and secured his head to a tree. Hollingsworth then tied Owen's feet, which forced him to sit against the tree with his feet lifted. This rigging would cause Owen to strangle if his feet dropped.

Hollingsworth and Baker returned to the camp. When Sharp asked how Owen was doing, Hollingsworth responded that he was "probably dead by now" because "he was turning blue" when they left him.

Hollingsworth returned to check on Owen four times over the next 2½ hours. The fourth time Hollingsworth checked, Owen was dead. Hollingsworth and Baker untied the body and took it to another location where they hoped it would remain hidden from the authorities.

Owen's body was found by law enforcement on July 2, 2006, near the Kansas River. The body's decomposition prevented the examiner from definitively determining the cause of death. The examiner opined, however, that asphyxiation was a likely cause.

After the discovery of Owen's body, Detective Michael Barron of the Topeka Police Department interviewed Ron Green on July 13, 2006. Green indicated that he had been at the homeless camp during part of the episode and implicated Hollingsworth, Baker, Sharp, and Cornell in Owen's eventual death. Baker, Sharp, and Hollingsworth were arrested that same day and brought to the law enforcement center for questioning.

Before Hollingsworth would speak to the police, he wanted proof that Sharp was also being questioned at the law enforcement center. He therefore told Detective Barron that he would explain what happened to Owen only if Barron first asked Sharp what she would call him in his "native tongue." After consulting Sharp, Barron told Hollingsworth that Sharp said Hollingsworth's name was "Kusama."

After receiving this information, Hollingsworth gave Detective Barron a detailed account of the events that led to Owen's death. Barron subsequently took Hollingsworth to the homeless camps, and Hollingsworth reenacted the crime and explained statements he made during the initial interview. Both the interview and the reenactment were videotaped, and portions of those videos were later played for the jury at trial. Hollingsworth also provided a written statement. The entire interview process, including the reenactment, spanned 7 hours.

Hollingsworth filed a pro se motion to suppress his statements and reenactment video, arguing that he was under stress due to the events in question and due to his living conditions at the time of his arrest. The State requested a *Jackson v. Denno* hearing to determine the voluntariness of his statements. See *Jackson v. Denno*, 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (1964). After hearing testimony from Detective Barron, the trial judge ruled that Hollingsworth's statements and reenactments on July 13, 2006, were "completely voluntary and intelligently made" and thus could be used at trial.

The State later filed a notice of intent to produce evidence under K.S.A. 60-455. In particular, the State sought to introduce evidence that Hollingsworth had an outstanding warrant at the time of the Owen episode to explain why Hollingsworth did not want Owen to call the police. At the close of a hearing on the issue, the trial court ruled that the evidence of Hollingsworth's warrant was admissible under K.S.A. 60-455 to prove his motive and intent for the kidnapping.

The jury found Hollingsworth guilty of felony murder and kidnapping. He was sentenced to consecutive sentences of life im-

prisonment for the murder conviction and 206 months' imprisonment for the kidnapping conviction.

More facts will be added as necessary to the analysis.

## ANALYSIS

Issue 1: *Hollingsworth did not preserve for appeal the issue of whether the statements he provided to the police during their investigation were voluntarily given.*

Hollingsworth first claims that the trial court erred when it admitted into evidence his handwritten and videotaped statements given during his police interrogation as well as the video of his reenactment of the events leading up to Owen's death. According to Hollingsworth, these statements were not voluntary under the totality of the circumstances. See *State v. Sharp*, 289 Kan. 72, 210 P.3d 590 (2009) (voluntariness of a confession must be determined under the totality of the circumstances; this ultimate determination is a legal conclusion requiring de novo appellate review).

Hollingsworth specifically claims that his statements were not voluntary because (1) the interview lasted 7 hours; (2) the detectives knew that Hollingsworth was a diabetic, and throughout the interview, he would rock back and forth; (3) he made comments throughout the interview that life was not worth living, indicating that he was not in a sane state of mind; (4) he was 18 years old; and (5) he had asked Detective Barron to ask Sharp what Hollingsworth's name was in his "native tongue" even though Hollingsworth only spoke English, indicating that he was not thinking clearly. Hollingsworth further argues that there were several "red flags" in the interview that should have indicated to the detectives that he was "quiet[,] young[,] and apparently influenced by his significantly older codefendants."

The State responds that the issue was not preserved through a specific and contemporaneous evidentiary objection and thus may not be raised on appeal. K.S.A. 60-404; see *State v. Bryant*, 285 Kan. 970, Syl. ¶ 6, 179 P.3d 1122 (2008) ("As a general rule, a party must make a timely and specific objection to the admission of evidence in order to preserve the issue for appeal."). While the record is unclear on whether Hollingsworth objected to these par-

ticular statements at all, at best he appeared to object on the basis of K.S.A. 60-455, not because of involuntariness. The State therefore argues that "[a] defendant cannot object to the introduction of evidence on one ground at trial and then assert another ground on appeal." *State v. Richmond*, 289 Kan. 419, Syl. ¶ 4, 212 P.3d 165 (2009).

Hollingsworth acknowledges his shift in bases for objections. But he nevertheless contends his argument should be addressed "to prevent denial of fundamental rights" as acknowledged in *State v. Anthony*, 282 Kan. 201, 206, 145 P.3d 1 (2006). In particular, Hollingsworth argues that the question of voluntariness implicates his Fifth Amendment right against self-incrimination.

We addressed a similar argument in *State v. Richmond*, 289 Kan. 419, 428-30, 212 P.3d 165 (2009). There, the defendant objected to the admission of evidence at trial on the basis of K.S.A. 60-455. On appeal, he not only argued 60-455, but also the additional bases of 60-447 and 60-445. We refused to address the newly asserted grounds on the merits because they had not been timely preserved with corresponding, specific objections at trial. We further refused to apply the asserted exceptions to our rule, *i.e.*, the need to serve the ends of justice or, as here, to prevent denial of fundamental rights. *Richmond*, 289 Kan. at 428-30. We relied in part upon our recent decision in *State v. King*, 288 Kan. 333, 204 P.3d 585 (2009):

"[A]s recently as March of this year in *State v. King*, [citation omitted], we emphasized 'the importance of this legislative mandate' contained in K.S.A. 60-404 which 'dictates that evidentiary errors *shall not be reviewed on appeal* unless a party has lodged a timely and *specific* objection to the alleged error at trial.' (Emphasis added.) 288 Kan. at 349. There, because defendant failed to object at trial to the prosecutor's cross-examination of him, we refused to consider his argument that the examination violated his rights under *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976) (prosecutor's use of defendant's postarrest silence to impeach credibility violates the Fifth and Fourteenth Amendments to the United States Constitution). We acknowledged, however, that we would continue to review, without trial objection, non-evidentiary-based claims of prosecutorial misconduct, *e.g.*, comments to a jury during voir dire. 289 Kan. 349.

"*King* affirmed this court's prior treatment of failures to object to evidence under K.S.A. 60-404, even where constitutional rights were at stake. See *e.g.*, *State v. Mays*, 277 Kan. 359, 384-85, 85 P.3d 1208 (2004) (defendant's failure to timely object to alleged hearsay statements precludes defendant from raising issue on

appeal, even where alleging violation of Confrontation Clause of Sixth Amendment to United States Constitution). While we acknowledge *King* and *Mays* involved no objection, and here we are instead concerned with an objection on one ground at trial and another ground on appeal, the same rationale applies. Both types of failure undercut the purpose of contemporaneous objections:

' "The purpose of the rule requiring a *timely* and *specific* objection is to give ' "the trial court the opportunity to conduct the trial without using the tainted evidence, and thus avoid possible reversal and a new trial." ' [Citation omitted.]" ' (Emphasis added.) *King*, 288 Kan. at 342.

In short, the trial court must be provided the specific objection so it may consider as fully as possible whether the evidence should be admitted and therefore reduce the chances of reversible error." *Richmond*, 289 Kan. at 428-29.

Accordingly, the fact that an evidentiary claim may have a federal constitutional—rather than a state statutory—basis does not alone excuse the lack of compliance with K.S.A. 60-404. See *Richmond*, 289 Kan. 419, Syl. ¶ 3.

Hollingsworth provides no alternative rationale for why the court should review this issue on appeal. Without a timely and specific objection, the voluntariness of his statements has not been properly preserved for this court's review.

Issue 2: *The trial court did not err in admitting evidence of Hollingsworth's outstanding warrant under K.S.A. 60-455 as proof of motive or intent.*

Hollingsworth next argues that the trial court erred in admitting evidence of his outstanding warrant under K.S.A. 60-455 as proof of his motive or intent.

During his interview by Detective Barron, Hollingsworth indicated that he decided to participate in Owen's kidnapping when Owen mentioned calling the police. Barron asked whether the reason Hollingsworth did not want Owen involving the police was because of "the warrants." Hollingsworth indicated that this indeed was the reason.

The version of K.S.A. 60-455 in effect in June 2006 stated:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-455 and 60-448 such evidence is admissible when relevant to prove some other

material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

We observe that the legislature amended the statute effective April 30, 2009. Neither party, however, has filed a letter of supplemental authority pursuant to Supreme Court Rule 6.09 (2008 Kan. Ct. R. Annot. 47) arguing the amendments' relevance to the issues before us.

Determining whether evidence was properly admitted pursuant to K.S.A. 60-455 requires several steps. *State v. Gunby*, 282 Kan. 39, 144 P.3d 647 (2006). The court must determine that the fact to be proven is material, *e.g.*, concerning intent, motive, knowledge, or identity. In other words, the court must determine whether the fact " 'has a legitimate and effective bearing on the decision of the case.' " *State v. Garcia*, 285 Kan. 1, 14, 169 P.3d 1069 (2007). Our standard of review for materiality is de novo. *State v. Reid*, 286 Kan. 494, 505, 186 P.3d 713 (2008).

The court must also determine whether the material fact is disputed. *Reid*, 286 Kan. at 505; *Garcia*, 285 Kan. at 14 (" '[T]he element or elements being considered . . . must be substantially at issue in the case.' "). The court must also determine whether the evidence is relevant to prove the disputed material fact, *i.e.*, whether it has "any tendency in reason to prove" that fact. K.S.A. 60-401(b); *Reid*, 286 Kan. at 505. This court reviews relevance— in particular, the probative element of 60-455—for abuse of discretion. *Reid*, 286 Kan. at 507.

The court must next determine whether the probative value of the evidence outweighs the potential for producing undue prejudice. *Reid*, 286 Kan. at 503. Our standard for reviewing this determination is also abuse of discretion. *Reid*, 286 Kan. at 512 (citing *Garcia*, 285 Kan. at 18). Finally, if the presented evidence meets all of these requirements, then the trial court must give a limiting instruction "informing the jury of the specific purpose for [the evidence's] admission." *Garcia*, 285 Kan. at 12.

Hollingsworth only argues step three error: that the district court erred in finding that the probative value of the warrants evidence outweighed the potential for producing undue prejudice. Accord-

ingly, we review the court's decision to admit this evidence for abuse of discretion. *Reid*, 286 Kan. at 505.

We previously concluded that the issue of the voluntariness of Hollingsworth's three statements to the police was not preserved for appellate review. Accordingly, their admission into evidence cannot now be challenged. His oral and written statements given at the police station clearly implicated him in the kidnapping, abuse, and death of Owen. His handwritten statement provides:

"David came to camp talking about getting me out of the woods and calling the police. I asked him not [to] and to please leave me alone. He persisted, started reaching into the bag (his bag) for what I still do not know. So I grabbed him and sat him down and tied his hands together. Then I took him down to the river and tied him to a tree. I told him don't slouch or you'll suffocate or you could pull the knot from behind your fingers out and set your self free. I left I checked on him 3x's and he was alright still breathing. I checked on him a fourth time and he was dead. So I moved his body into the brush higher up along the KS river. I burned all his belongings and his personal things."

Hollingsworth's videotaped reenactment of the events at the homeless camp further implicated him. Various incriminating elements of these statements and the reenactment were corroborated by the testimony of defendant Cornell, as well as by certain physical evidence.

Evidence of Hollingsworth's outstanding warrant would be prejudicial to him in his criminal case. This fact alone does not necessarily lead to the conclusion, however, that the evidence should have been excluded. Virtually all evidence presented by the State during a criminal prosecution is going to be prejudicial to the defendant. The question before this court is whether the trial court abused its discretion in determining that the evidence was not *unduly* prejudicial. *Reid*, 286 Kan. at 503. Evidence is unduly prejudicial when it " 'actually or probably brings about the wrong result under the circumstances of the case.' " *Garcia*, 285 Kan. at 18.

Given the large amount of incriminating information from Hollingsworth's multiple statements alone, evidence of an outstanding warrant did not change the result of his trial. Moreover, the only evidence presented as to his outstanding warrant was that such a warrant existed. No information was provided regarding the spe-

cific information it contained. Considering all of these circumstances, we conclude that the trial court did not abuse its discretion in determining that the evidence of Hollingsworth's outstanding warrant was not unduly prejudicial. See *Reid*, 286 Kan. 494.

Affirmed.

\* \* \*

JOHNSON, J., dissenting: I disagree with the majority's determination that Hollingsworth did not preserve for appeal the issue of whether the statements he provided to the police during their investigation were voluntarily given. That determination is based upon the majority's view that Hollingsworth failed to comply with the provisions of K.S.A. 60-404 and, thus, undermined the purpose behind the contemporaneous objection rule. Citing to *State v. Richmond*, 289 Kan. 419, 429, 212 P.3d 165 (2009), which quoted *State v. King*, 288 Kan. 333, 342, 204 P.3d 585 (2009), the majority identifies the rule's rationale as being "to give 'the trial court the opportunity to conduct the trial without using the tainted evidence, and thus avoid possible reversal and a new trial.' " Here, Hollingsworth complied with the letter of the statute and gave the district court ample opportunity to avoid the use of tainted evidence.

On October 27, 2006, prior to trial, Hollingsworth filed a pro se motion to suppress his statements and reenactments, arguing that he was under stress due to the events in question and due to his living conditions at the time of his arrest. The State responded by requesting a *Jackson v. Denno* hearing to determine the voluntariness of Hollingsworth's statements. *Jackson v. Denno*, 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (1964). On December 8, 2006, the district court conducted an evidentiary hearing on that issue and subsequently ruled that the evidence was admissible at trial.

The majority apparently construes K.S.A. 60-404 as requiring Hollingsworth to reassert and reargue his objection at the trial. However, the statute does not say that. It provides:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence

unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." K.S.A. 60-404.

Here, there appears of record an objection to the evidence which was timely interposed well in advance of trial that clearly specifies the ground for the objection. The district court had ample opportunity to avoid conducting a trial with tainted evidence and, accordingly, to avoid the possibility of reversal or a new trial. Indeed, the district court was not only alerted to the admissibility challenge, but it had the additional benefit of an evidentiary hearing, after which it could carefully consider and rule on the objection. Then, having ruled that Hollingsworth's confession was admissible, the court's order would remain the law of this case, until such time as the court might modify or amend its prior ruling.

In effect, the majority reads K.S.A. 60-404 as requiring a defendant, at trial, to timely interpose a motion for modification of the court's previous adverse admissibility ruling. That interpretation does not comport with either the statutory language or the rationale for the rule. I would find that the issue was preserved for appeal.