NOT DESIGNATED FOR PUBLICATION

No. 112,142

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES TULLY COOPER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Butler District Court; MICHAEL E. WARD, judge. Opinion filed March 11, 2016. Affirmed.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellant.

*Amber R. Norris*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MCANANY, J., and JOHNSON, S.J.

*Per Curiam*: James Cooper appeals his convictions for aggravated battery causing great bodily harm and aggravated burglary. First, Cooper maintains that, as a matter of law, the level of bodily harm he inflicted on his victim was insufficient to constitute great bodily harm. Next, he argues that the trial court erred in admitting prior bad acts evidence under K.S.A. 2011 Supp. 60-455. Finally, he contends that his Sixth and Fourteenth Amendment rights were violated when the trial court used his prior convictions to increase his sentence without proving them to a jury. Finding no error, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

James Cooper and Brenda Buck became married at common law in 2008. Both were heavy drinkers, and they had a volatile relationship. On July 27, 2010, Cooper beat Buck's upper body and shoulder with an aluminum baseball bat. Cooper pled guilty to a reduced charge of criminal threat. Cooper and Buck separated, then divorced, but they eventually resumed contact with each other.

The current charges arose from a violent incident that occurred February 24, 2012. Buck alleged that Cooper had beaten and choked her with a metal jack handle. Both the police and the fire department investigated the incident. Based on the results of those investigations the State charged Cooper with a count of attempted murder or, in the alternative, aggravated battery causing great bodily harm, a count of aggravated burglary, and a count of domestic battery. After Cooper was bound over for trial the State moved to admit evidence under K.S.A. 2011 Supp. 60-455 of Cooper's violent acts toward Buck occurring during the July 27, 2010, incident. The district court conducted an evidentiary hearing on the motion. It concluded that the evidence was admissible at jury trial to show Cooper's intent and lack of mistake or accident. Cooper subsequently waived his right to a jury trial: because Cooper intended to argue self-defense at trial, he said he preferred to submit that defense to a judge rather than a jury.

In October 2013, the district court conducted a bench trial on the charges. We summarize the trial testimony relevant to the issues on appeal in the following.

Buck testified that on February 24, 2012, at around 7:45 a.m. she returned home from taking her son to school. After entering her house she happened on Cooper, who did not have permission to be on her property, hiding in her walk-in closet. Cooper jumped out and began hitting her in the head with a metal jack handle, exclaiming "I'm tired of you messing with me and my family." Buck ran out the front door to the concrete stoop,

2

but Cooper caught her, nearly ripping the shirt from her body. While Buck bled from her head wounds onto the concrete, Cooper tried to throttle her with the jack handle. Buck broke free and ran toward the street. Cooper tackled her, causing both to fall in the yard. Cooper lost control of the jack handle, and it flew forward. Buck got up, grabbed the jack handle, and threw it further away, then took off running barefooted down the street. Cooper picked up the jack handle and gave chase, yelling for her to stop. As Buck neared the neighborhood bar she frequented, True Lies, one of its employees, Connie Hasting, arrived. Cooper broke off his chase. Hasting helped Buck into the bar, wiped blood from Buck's head, face, and bare feet and called 911.

Hasting testified that she observed Cooper, who held a metal object in his left hand, following Buck. He stopped, then appeared to leave. Hasting noted that "blood was coming down the side of [Buck's] face, and across her front." Emergency medical personnel responded to the 911 call and transported Buck to Wesley Medical Center, where she received treatment and diagnostic services. Buck suffered three wounds to her head. Staff cleaned and dressed two of the wounds and gave Buck a tetanus shot. However, the 3 cm (just over an inch) long laceration required that the physician "reapproximate" the edges of the torn skin on her scalp and suture it back together. Trauma nurse Angela Basham-Saif testified that Buck's score on the GCS (Glasgow Coma Scale) was a below normal 13 rather than the normal 15. The nurse said she was concerned about Buck's head trauma but did not know if its effects would be short or long term. Buck testified that she suffered a concussion.

Buck described her scalp injuries, saying "I got three nice holes in my head." Buck also identified her various other injuries from photo exhibits: a bloody abrasion to her right hand, with swelling; scraping and bruising to the left arm; an abrasion to her left hand; and abrasions across her upper chest and lower neck. Buck said she suffered frequent headaches from her head injuries and had ongoing difficulty in swallowing from being choked with the jack handle.

3

Police officers testified that they responded to Cooper's residence soon after the incident to investigate. They realized there was a fire somewhere inside. Cooper came out the front door with his shoes and pants aflame. The officers extinguished the fire on Cooper, and firemen made sure the fire in Cooper's shop was extinguished. Fire investigators determined that the fire was fueled by gasoline ignited, accidentally or purposefully, by human action. Photo evidence confirmed that the jack handle involved in the altercation was at the center of the fire's point of origin.

By way of defense, Cooper called his brother and daughter as witnesses. Neither of them was present at the time of the incident. They attacked Buck's character and credibility. They supported Cooper's defense by confirming that he consistently claimed Buck was the aggressor in the altercation.

Cooper then testified. He said he went to Buck's house the morning of the incident to discuss money she and her family owed him and to retrieve a jack handle she recently had taken from his shop. When he arrived he saw that her car was gone but that the front door was open. He went inside and noticed that the back door was also open. Cooper, concerned about Buck's valuables in the house, looked around to check on things. He also looked for but did not see the jack handle.

Cooper said that Buck soon arrived home. She asked Cooper what he was doing there and began hitting him with the jack handle. The two then wrestled. Cooper took Buck to the floor. He held her there with his right arm across her chest and his left arm controlling her right arm and the jack handle. He told her he simply wanted to talk. She agreed. He let her up, but she then bolted for the door. Buck's shirt caught on his knee and ripped. Buck then fell on the front porch as she ran out the door. Cooper followed her outside, saw that the jack handle was in the street, and picked it up. Cooper watched Buck run down the gravel street screaming. He saw her fall again while she was running. Cooper followed her simply to check on her condition. When Buck arrived at True Lies,

4

Cooper stopped. He returned to his home, threw the jack handle in his shop, then laid down in the living room to try to forget the incident.

Cooper testified that he fell asleep. He then awoke and went to the shop to feed his dog. Cooper ignited a barbeque lighter in order to see as the lights in the shop were not working. He said that at some point a small fire started which he tried to stomp out. The flames grew out of control setting Cooper's pants ablaze. Cooper fled the shop and the residence, encountering the police outside. He was hospitalized for treatment of his burns and remained so until August 2012. Cooper testified that he never intentionally hit Buck and that he did not intentionally start the fire.

At the conclusion of the evidence the State argued that Buck's testimony was supported by the evidence, and that Cooper had started the fire in his shop as he was burning away forensic evidence from the jack handle. Cooper argued that his evidence was sufficient to create reasonable doubt. The district court convicted Cooper of aggravated battery and aggravated burglary. Cooper timely appeals from those convictions.

ANALYSIS

THE STATE'S EVIDENCE WAS SUFFICIENT TO SHOW GREAT BODILY HARM

Cooper challenges the sufficiency of the evidence to support his conviction on the aggravated battery charge. Specifically, Cooper argues that the injuries Buck suffered did not amount to great bodily harm as a matter of law.

When considering a challenge to the sufficiency of the evidence in a criminal case we determine "whether, after reviewing all the evidence in a light most favorable to the prosecution, the reviewing court is convinced a rational factfinder could have found the

5

defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility." *State v. Lloyd*, 299 Kan. 620, Syl. ¶ 3, 325 P.3d 1122 (2014).

K.S.A. 2011 Supp. 21-5413(b)(1)(A) criminalizes "[k]nowingly causing great bodily harm to another person." However, the statute does not define great bodily harm. Appellate courts have construed the word "great" to distinguish the bodily harm required to prove aggravated battery from the lesser degree of mere bodily harm required to prove a simple battery. Great bodily harm is more than "slight, trivial, minor, or moderate harm, and as such it does not include mere bruises." *State v. Johnson*, 46 Kan. App. 2d 870, 881, 265 P.3d 585 (2011). Whether an injury constitutes great bodily harm is ordinarily a question of fact for the jury to decide. *State v. Williams*, 295 Kan. 506, 523, 286 P.3d 506 (2012).

To support his argument that Buck's injuries did not constitute great bodily harm, Cooper relies on *State v. Kossow*, No. 104,735, 2011 WL 5027110 (Kan. App. 2011) (unpublished opinion). In *Kossow*, a teacher placed a combative student in a Full Nelson wrestling hold to subdue him. The student suffered a sore neck with some bruising, red dots on his face, and blood spots in the corner of his right eye, all of which soon disappeared. A panel of this court determined that such injuries did not constitute great bodily harm. 2011 WL 5027110, at *6-7.

Cooper maintains that Buck, like the student in *Kossow*, did not suffer great bodily harm. Instead, Cooper claims that Buck "merely had minor bruising, slight lacerations, and minor abrasions." Cooper's comparison of the injuries the student suffered in *Kossow* with Buck's injuries is flawed, though, because Buck described more and more severe injuries, the consequences of which had not disappeared by the time of trial.

6

Here, there was sufficient evidence to support the court's conclusion that Cooper inflicted great bodily harm on Buck. The evidence showed that Buck was hit several times in the head and upper body with a thick metal rod, she had open wounds ("three nice holes") on her scalp, one of which was over an inch long and required stitches, cuts on her right hand and an abrasion on the left, and red marks, bruising, and abrasions on her left arm, chest, and neck. Buck testified that she had suffered a concussion. Buck also said that, even 18 months after the incident, she still suffered from persistent headaches caused by the blows to her head and had difficulty swallowing from the choking.

Again, whether a victim has suffered great bodily harm is ordinarily a question of fact for the jury, or, in the case of a bench trial as here, a judge to decide. We agree with the *Kossow* panel that some injuries simply do not rise to the level of great bodily harm as a matter of law. However, Cooper's argument that Buck's injuries could not have risen to the level of great bodily harm actually invites us to reweigh the evidence. We decline. The State's evidence was such that a rational factfinder could conclude that the harm Buck suffered at Cooper's hands was greater than "slight, trivial, minor, or moderate harm." *State v. Johnson*, 46 Kan. App. 2d at 881. Thus, the decision on whether the injuries constituted great bodily harm was for the factfinder. We are satisfied that there was sufficient evidence, viewed, as we must, in a light most favorable to the prosecution, for a rational factfinder to find beyond a reasonable doubt that Cooper's battering of Buck caused her great bodily harm.

THE TRIAL COURT DID NOT ERR IN ADMITTING EVIDENCE UNDER K.S.A. 2011 SUPP. 60-455

Next, Cooper argues that the trial court erred when it allowed at trial the admission of prior bad acts evidence under K.S.A. 2011 Supp. 60-455 to prove Cooper's intent and absence of mistake or accident. Cooper contends that these material facts were not disputed. Therefore, regardless of the similarity of the prior bad act to the charged one,

7

the prior crime evidence was neither material nor relevant and should have been excluded.

The district court conducted a pretrial hearing on the State's K.S.A. 2011 Supp. 60-455 motion. The State sought to introduce evidence of the incident that occurred on July 22, 2010, which included the following facts: Cooper and Buck had been arguing all day; Buck asked Cooper to leave multiple times but he refused; at some point, Cooper grabbed an aluminum baseball bat and began hitting Buck in the shoulder and arm area as she tried to get away; and, Cooper eventually pled guilty to a reduced charge of criminal threat. The district court found the prior bad act evidence admissible because it related to Cooper's intent in causing the injuries Buck suffered in the charged alternative crimes and whether the injuries were inflicted in the absence of mistake or accident. Cooper preserved his challenge to the propriety of that decision by objecting at trial to the admissibility of the prior bad act evidence. The district court admitted the evidence.

K.S.A. 2011 Supp. 60-455(a) proscribes the admission of evidence of other crimes or civil wrongs to prove the accused's "disposition" or propensity to commit other crimes. However, K.S.A. 2011 Supp. 60-455(b) states that evidence a person committed a crime or civil wrong on a specified occasion "is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." As acknowledged in the recent, notable case of *State v. Robinson*, 303 Kan. 11, 235, 363 P.3d 875 (2015), our Supreme Court has "adopted a multistep analysis for determining the admission of such evidence and defined the standard of review applicable to each step." The court reiterated those analytical requirements by citing the following from *State v. Hollingsworth*, 289 Kan. 1250, Syl. ¶ 6, 221 P.3d 1122 (2009):

> "Determining whether evidence was properly admitted pursuant to K.S.A. 60-
> 455 requires several steps. The appellate court must determine that the fact to be proven

is material, *e.g.*, concerning intent, motive, knowledge, or identity. In other words, the court must determine whether the fact has a legitimate and effective bearing on the decision in the case. The appellate court standard of review for materiality is de novo. *The appellate court must also determine whether the material fact is disputed, i.e., the element or elements being considered must be substantially at issue in the case.* The appellate court must also determine whether the evidence presented is relevant to prove the disputed material fact, *i.e.*, whether it has any tendency in reason to prove that fact. The appellate court reviews relevance—in particular, the probative element—of K.S.A. 60-455 evidence for abuse of discretion. The burden of proof is on the party alleging the discretion is abused. The court must also determine whether the probative value of the evidence outweighs the potential for producing undue prejudice. The appellate standard for reviewing this determination is abuse of discretion." (Emphasis added, the emphasized analytical step being the focus of Cooper's argument.) *State v. Hollingsworth*, 289 Kan. 1250, Syl. ¶ 6, 221 P.3d 1122 (2009).

The parties have demonstrated their awareness of these analytical steps in their briefs. They do not dispute the standards of review we are to employ when we consider Cooper's admissibility challenge.

However, Cooper's challenge to whether intent and/or absence of mistake and accident were disputed is narrow, and succinctly stated in his brief in the following:

"When analyzing whether intent is at issue for purposes of K.S.A. 60-455, with respect to intent, *the question is whether the defendant has offered an innocent explanation* for his actions. See *State v. Boggs*, 287 Kan. 298, 314, 197 P.3d 441 (2008). Similarly, in order for prior crimes evidence to be admissible to prove absence of mistake or accident, *the defendant must offer an innocent explanation for his actions*. See, *State v. Prine*, 287 Kan. at 728, citing *State v. Spurlock*, 30 Kan. App. 2d 921, 927, 52 P.3d 371 (2002) and *State v. Gibson*, 30 Kan. App. 2d 937, Syl. ¶4, 52 P.3d 339 (2002). In the instant case, *the district court incorrectly held that James placed both absence of mistake or accident and intent at issue by simply entering a not guilty plea to the crime*." (Emphasis added.)

9

Cooper claims the district court failed to require a showing that he offered an innocent explanation of the actions that resulted in Buck's injuries. He contends that the court erroneously determined that prior bad acts evidence was admissible in the face of a general denial. He bases his challenge on isolated comments made by the district court:

"Turning to the absence of mistake or accident, by his plea of not guilty, I mean, the defendant puts into question, puts into issue all of the elements of the crime. By his plea of not guilty, the defendant basically says, I did not premeditate the killing of Brenda Buck. I did not intent to kill her.

"And with respect to the alternative charge, he says, I did not intend to cause her great bodily harm. So he puts in issue all of the material facts in Count 1.

"Apparently the State believes that the evidence in this case is going to be that if this case goes to trial, that the defendant has, essentially, argued that he did not do these things."

The problem with this argument is that Cooper did not simply defend by the general denial inherent in a not guilty plea. The district court recognized that Cooper may well claim that any injuries Buck suffered were the result of Cooper's actions to defend himself and/or were accidentally inflicted during that defense. The district court alluded to the fact that, if Cooper demonstrated the potential defenses of self-defense or accident, Cooper could not have had the necessary criminal intent to commit the alternative crimes of attempted murder or aggravated battery. Thus, the district court reasoned:

"So both alternative versions of Count I require proof by the State of either intent to kill or intent to cause great bodily harm. So intent is very much an issue and factor in this case. It's a disputed material fact, and one that's going to have to be proven beyond a reasonable doubt by the State."

The trial court reiterated this finding when Cooper challenged the admission of the prior bad acts evidence at trial:

10

"Well, again, I'm going to admit evidence of the prior crime in 10-CR-322 as it bears upon intent, absence of mistake, and accident.

"Intent clearly is an element of [premeditated] first-degree murder. Intent is also required to prove aggravated battery.

*"You know, an accidental striking of someone would not be a crime, and I believe I've heard a lot of questions that would indicate that the defendant is asserting this may well have been an accident; so I think those factors are in play."* (Emphasis added.)

Cooper's claims that intent and absence of mistake or accident were not disputed material facts are without support in the record. Cooper did, in fact, offer an innocent explanation for the charged conduct. Cooper claimed that Buck was the initial aggressor and he was the victim. Cooper testified that his intent was simply to talk to Buck, possibly have a beer with her, talk to her about money owed to him, and obtain the return of the jack handle he alleged she had taken. Cooper admitted that he and Buck got into a physical altercation. Cooper testified that after Buck hit him with the jack handle the two fought over it. He threw her to the floor and pinned her there. Cooper said he did this to stop her from hitting him and to explain to her that he just wanted to talk. Implicit in Cooper's explanation of the events is his defense that he did not intentionally inflict the injuries Buck suffered, and any injuries Buck suffered occurred as he defended himself or by accident. Inescapably, and contrary to Cooper's factual contention, Cooper did offer an "innocent explanation" for his actions. *State v. Boggs*, 287 Kan. 298, 314, 197 P.3d 441 (2008); *State v. Prine*, 287 Kan. 713, 728, 200 P.3d 1 (2009).

Thus, Cooper's defense placed his intent along with absence of mistake or accident at the heart of the decision the factfinder needed to make. Cooper argues no error in the admission of the K.S.A. 2011 Supp. 60-455 evidence other than that based on his claim that intent and absence of mistake or accident were not disputed material facts. Because we conclude that argument is without factual basis in the record, Cooper's challenge to

11

the admissibility of the K.S.A. 2011 Supp. 60-455 evidence is without merit. Under our *Hollingsworth* analysis, we find that intent and absence of mistake or accident were material to the decision the factfinder was called upon to make. Moreover, the district court did not abuse its discretion when it determined that the prior bad acts evidence was relevant to prove those material facts and that those material facts were disputed. Cooper has failed to persuade us that the district court erred when it admitted the challenged K.S.A. 2011 Supp. 60-455 evidence.

COOPER'S SENTENCE IS NOT UNCONSTITUTIONAL

In his final issue, Cooper argues that the trial court violated his constitutional rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by using his prior convictions to increase his sentence without requiring that those convictions be included in the complaint and proven to a jury beyond a reasonable doubt. Cooper acknowledges that the Kansas Supreme Court has rejected essentially the same *Apprendi* contentions he now advances. See *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002).

This court is duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its earlier position. *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan. ___ (2015). There is no indication that our Supreme Court is departing from its position on this issue. See *State v. Barber*, 302 Kan. 367, 386, 353 P.3d 1108 (2015). Therefore, the trial court did not err in using Cooper's criminal history to increase his sentence.

Affirmed.