NOT DESIGNATED FOR PUBLICATION

No. 115,879

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CLAYTON DEION WILMER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR A. SUNDBY, judge. Opinion filed December 29, 2017. Reversed and remanded.

*Clayton J. Perkins*, of Kansas Appellate Defender Office, for appellant.

*Christopher R. Scott*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM:  A jury in Leavenworth County District Court convicted Clayton Deion Wilmer of aggravated battery for beating Caitlyn Cruce, his sometime girlfriend and the mother of their young daughter. The jury also convicted him of several other crimes in which Cruce was the victim. We find the combined effect of the district court's rulings admitting improper expert testimony on domestic violence and unduly prejudicial evidence of an entirely different violent crime likely influenced the outcome of the trial. We, therefore, reverse the convictions and remand for a new trial.

1

Wilmer and Cruce had an off-and-on relationship over the course of about five years and had a child together. In August 2014, after they had again separated, Wilmer forcibly entered the house where Cruce lived by breaking a window in the front door and unlocking it. Wilmer then repeatedly punched Cruce. She fled out the backdoor and managed to call 911 on her cell phone. Wilmer chased after Cruce, caught her, grabbed the cell phone and broke it, and continued to hit her. He then simply walked away. A badly beaten Cruce made her way to a neighbor's house, where emergency medical personnel and police officers met her.

Cruce indicated to the neighbor and the first responders that her "boyfriend" had attacked her. Cruce was transported to an area hospital. Wilmer had broken Cruce's jaw on both sides of her face. Those injuries required surgery, and Cruce had her jaw wired shut for several weeks. She was otherwise cut and bruised. While at the hospital, Cruce provided a written statement to the Leavenworth police identifying Wilmer as her attacker. She also indicated Wilmer said he broke in and beat her because he thought she was texting with someone, suggesting jealousy as a motive. Wilmer was arrested and at some point released on bond.

After his arrest, Wilmer repeatedly wrote to and texted Cruce and otherwise communicated with her. He frequently asked her to get back together with him and to derail his prosecution either by refusing to testify or saying he hadn't hurt her. Some of Wilmer's communications also contained inculpatory admissions about the beating.

At the preliminary hearing, Cruce departed from the statements she had made just after she had been beaten and offered an unconvincing story in which she suggested Wilmer may have accidentally broken her jaw earlier in the day and returned in the evening with a woman she didn't know who then attacked her. During the hearing,

2

however, Cruce acknowledged she had previously said Wilmer beat her. Based on the contemporaneous accounts Cruce gave her neighbor, the emergency medical personnel, and the police and other evidence, the district court bound Wilmer over for trial.

The Leavenworth County Attorney's Office ultimately charged Wilmer with severity level 4 aggravated battery for inflicting great bodily harm on Cruce, robbery for taking her cell phone, criminal damage to property, criminal restraint, and unlawfully attempting to dissuade Cruce from cooperating with law enforcement officers in violation of K.S.A. 2014 Supp. 21-5909(a). At trial, Cruce testified consistently with her original account of the crime—Wilmer broke into her residence, brutally beat her, and took her cell phone as she called for help. Cruce explained her contradictory preliminary hearing testimony as a product of her seemingly conflicting desire to get back together with Wilmer as the father of her child and fear that he might again physically harm her.

At trial, the prosecutor presented expert testimony about common behavioral patterns of perpetrators and victims of domestic violence. The prosecutor also used evidence of a later incident in which Wilmer approached Cruce and a man and fired a handgun into a car in which they were sitting. We defer further discussion of that evidence for our analysis of the points on appeal.

The jury convicted Wilmer of aggravated battery and robbery, both of which are felonies, and of criminal restraint and dissuading a witness or victim, both of which are misdemeanors. The jury found Wilmer not guilty of the criminal damage to property charge. The district court later sentenced Wilmer to a controlling term of 194 months in prison, reflecting 162 months for the aggravated battery to be served consecutive to 32 months for the robbery and substantially shorter concurrent sentences on the misdemeanor convictions. Wilmer has appealed.

*Expert Witness Testimony*

The county attorney's office gave pretrial notice that it intended to call LeVona Andersen as an expert witness on behavioral patterns of perpetrators and victims in violent domestic relationships. Pertinent here are the standards for admitting expert testimony set out in K.S.A. 2016 Supp. 60-456(b): (1) the testimony must be "based on sufficient facts or data"; (2) the testimony must be "the product of reliable principles and methods"; and (3) the witness must have "reliably applied the principles and methods to the facts of the case." Those standards presuppose a witness otherwise qualified by education, experience, or other means to render expert opinions in a given field.

A district court's decision to admit expert testimony is typically reviewed for abuse of discretion. *State v. Gaona*, 293 Kan. 930, 939, 270 P.3d 1165 (2012); *Smart v. BNSF Railway Co.*, 52 Kan. App. 2d 486, 493-94, 369 P.3d 966 (2016). A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011).

In this case, Wilmer requested a pretrial hearing on the admissibility of the proposed expert testimony. See K.S.A. 60-457(b). In all respects material to the appeal, Andersen's testimony at the hearing conformed to her later trial testimony. At the hearing, the district court found Andersen's testimony satisfied K.S.A. 2016 Supp. 60-456(b) and could be admitted at trial. During the trial, Wilmer again objected to Andersen testifying, thereby preserving his objection.

For purposes of the appeal, nobody disputes that Andersen is an expert on domestic violence based on her educational background and her many years of work as a counselor and program manager. And while Andersen may have been knowledgeable in both academic and practical ways about the interaction of people caught up in domestic violence, she candidly admitted both at the pretrial hearing and at trial that she knew absolutely nothing about Wilmer, Cruce, their relationship, or the charged crimes. So what she had to say was simply a collection of free-floating concepts wholly unconnected to the factual circumstances presented to the jury.

Andersen and her testimony plainly failed to satisfy at least one statutory criterion for admissible expert opinions set forth in K.S.A. 2016 Supp. 60-456(b)—she didn't apply her expertise to the facts of the case in fashioning the evidence she offered. This was neither a matter of degree nor a debatable contention. Andersen was unable to tie her opinions about domestic violence generally to the specific relationship and interactions of Wilmer and Cruce. To find those abstract opinions admissible, the district court necessarily erred in applying K.S.A. 2016 Supp. 60-456(b). That reflects a failure to correctly apply the governing legal framework and constitutes an abuse of discretion. The district court should have granted Wilmer's pretrial motion to exclude Andersen's testimony and simply replicated that mistake in allowing Andersen to testify at trial.

The erroneous admission of evidence as part of the State's case does not, however, necessarily require reversal of a jury's guilty verdicts. The error may be harmless in any given trial. See *State v. Torres*, 294 Kan. 135, 143, 273 P.3d 729 (2012). We suppose Andersen's lengthy testimony would have garnered the jurors' attention and, thus, would have been distracting to them, since they should not have heard it in the first place. A distraction does not necessarily equate to actual prejudice. See *State v. Miller*, No. 109,716, 2015 WL 3632029, at *6 (Kan. App. 2015) (unpublished opinion) (jury instruction correctly stating superfluous legal principle unlikely prejudicial). But Andersen injected general concepts about couples in ongoing physically abusive

5

relationships that were more than just distracting. Here, there was no direct evidence that Wilmer had beaten Cruce before the attack in August 2014, although their relationship had deteriorated to the point they regularly argued with each other.

For example, Andersen detailed the cycle-of-violence syndrome in which the abuser, typically the man, physically injures the other person in the relationship. The victim then seeks help and expresses a willingness to leave the abuser and pursue criminal charges. But the abuser commonly flatters and cajoles the victim and professes complete reformation in an effort to coax the victim back and to scuttle any criminal proceedings. The victim buys into those representations, recants the accusations of abuse, and resumes the relationship. After a time, the abuser again physically harms the victim, setting off another cycle of efforts to escape, promises of change, reconciliation, recanting of accusations, and renewed abuse. See *People v. Brown*, 96 Cal. App. 4th Supp. 1, 24, 117 Cal. Rptr. 2d 738 (2001) (outlining cycle-of-violence theory); *State v. Prewitt*, No. 106,725, 2013 WL 646480, at *1 (Kan. App. 2013) (unpublished opinion). The cycle of violence may explain why the victim of abuse will recant earlier accusations against a domestic partner when called as a government witness at trial in the criminal prosecution of the abuser. Courts have admitted expert testimony on the cycle for that purpose. See *State v. Ankeny*, 358 Mont. 32, 41-42, 243 P.3d 391 (2010) (social worker properly allowed to give testimony on battered woman syndrome and cycle of violence to explain why victim recanted allegations against defendant).

Here, Cruce recanted or at least substantially altered her accusation against Wilmer at the preliminary hearing. At the trial, however, Cruce had returned to her original account identifying Wilmer as her attacker. Cruce explained to the jurors the reasons for her shifting accounts of the events. The need for expert testimony in that situation—where a victim has recanted a recantation and offered an explanation—seems far less compelling than one in which the victim's recantation of the accusation forms the basis of her trial testimony. In addition, however, the cycle-of-violence explanation

6

Andersen suggested depends upon a domestic relationship marked by repeated episodes of physical abuse, followed by separation, reconciliation, and often denial of the abuse itself. Here, there was no such evidence, although there were oblique references to possible physical confrontations between Wilmer and Cruce.

Andersen similarly testified about other behaviors common to partners in chronically abusive relationships. All of that testimony was unconnected to the facts of this case and essentially unsupported in the evidence. We think the jurors could be puzzled by the testimony and easily might consider it as bolstering an inference Wilmer had physically abused Cruce multiple times during their relationship. Ultimately, the jurors were left to forge their own connections between the abstract testimony from Andersen about domestic violence and the facts of this case that didn't readily fit with some of the dynamics she described. The jurors, in effect, became their own experts in trying to link the testimony and the facts—an exercise in impermissible speculation improperly thrust upon them. In closing argument, the prosecutor specifically referred to Andersen's testimony and discussed the cycle of violence and several other concepts she presented. The argument only reinforced the prejudicial impact of that inadmissible testimony.

We defer an analysis of the degree of prejudice to take into account the impact of a second trial error. See *State v. Smith-Parker*, 301 Kan. 132, 163, 340 P.3d 485 (2014) (court postpones prejudice determination of particular trial error for consideration collectively with other trial errors).

*Other Crimes Evidence under K.S.A. 60-455*

The district court allowed Cruce to testify at trial about an incident in which Wilmer approached her car in which she was sitting with a man and her daughter. The car was parked in the driveway of Cruce's home. Wilmer fired a single shot from a handgun

into the car, hitting the man in the leg. Wilmer then ran off. The incident happened nearly three months after the August 2014 beating. Cruce testified that about 10 minutes before the shooting, Wilmer sent her several text messages instructing her to answer her telephone or she would regret it. Cruce said she texted back that she "didn't want to be with him anymore."

Wilmer has since been charged, tried, and convicted of several felonies related to the shooting. He has separately appealed those convictions, and the appeal is pending. *State v. Wilmer*, No. 117,080 (appeal docketed January 20, 2017). The jurors in this case heard only about the incident itself. They were informed of none of the judicial proceedings arising from the shooting.

The county attorney's office argued the shooting incident should be admitted under K.S.A. 2016 Supp. 60-455(b) to prove Wilmer's motive and intent for the attack on and beating of Cruce in her home the preceding August. The district court held a pretrial hearing and determined the evidence could be admitted. At trial, Wilmer lodged an objection on the grounds the evidence of the shooting "violates the mandates of K.S.A. 60-455." The district court overruled the objection. Although Wilmer's trial objection was not a model of precision, it encompassed the district court's required weighing of probative value against undue prejudice. The point has been preserved for review.

Pertinent here, K.S.A. 2016 Supp. 60-455(a) contains a general provision excluding evidence a defendant "committed a crime or civil wrong on a specified occasion . . . to prove [the defendant's] disposition to commit crime or civil wrong." That is, the shooting could not have been admitted to show Wilmer has a disposition or propensity to commit violent or criminal acts, and, therefore, consistent with that disposition, he must have attacked and beaten Cruce. But K.S.A. 2016 Supp. 60-455(b) contains a nonexclusive list of exceptions to the general exclusion, so evidence of other crimes may be admitted to prove matters other than propensity or disposition. Those

8

matters include a defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident" in connection with the charged crimes. K.S.A. 2016 Supp. 60-455(b). In 2009, the Legislature added a separate, broader exception in K.S.A. 60-455(d) admitting propensity evidence in designated sex crime cases; that exception is inapplicable here. Even if a district court finds evidence of another crime admissible under K.S.A. 2016 Supp. 60-455(b), it must weigh the probative value of that evidence against any undue prejudice to the defendant. If the evidence is more unfairly prejudicial than probative, the district court should exclude it. See *State v. Weis*, 47 Kan. App. 2d 703, 710, 280 P.3d 805 (2012), *aff'd* 2017 WL 3584995 (Kan. 2017) (unpublished opinion).

The primary reason for the limitation on other crimes evidence is a public policy one: a jury might well rely on the evidence of those crimes and the disreputable propensity they necessarily establish to convict a defendant of the charged crimes notwithstanding questionable evidence of guilt. *State v. Boggs*, 287 Kan. 298, 305, 197 P.3d 441 (2008). The *Boggs* court identified three forms of prejudice in admitting other crimes evidence: (1) a jury may "exaggerate" its importance and conclude a defendant must be guilty because he or she has done something similar on other occasions; (2) the defendant deserves to be punished for the other wrong regardless of his or her guilt of the crime charged; and (3) because a defendant committed other bad acts, his or her evidence of innocence in this case should not be believed. 287 Kan. at 305.

To assess the challenge on appeal, we need to consider both the purposes advanced for admitting the shooting and any impermissible prejudice attached to that evidence. As we indicated, the prosecutor argued the shooting bore on either Wilmer's motive or his intent for the earlier beating of Cruce and the related crimes—the crimes on which the jury was to render verdicts in this case. A defendant's motive is typically relevant in a criminal case, although it is not, strictly speaking, an element of most crimes. The prosecution may, therefore, offer evidence establishing motive. *State v.*

*Carapezza*, 286 Kan. 992, 999, 191 P.3d 256 (2008). Motive refers to the reason a person commits a crime or what the criminal hopes to accomplish. *State v. Wells*, 289 Kan. 1219, 1227, 221 P.3d 561 (2009); *Carapezza*, 286 Kan. at 999 (motive "explain[s] why the defendant may have committed the crime"). Motive differs from specific or general criminal intent in that intent addresses the perpetrator's thought process in acting deliberately and purposefully, as opposed to carelessly or accidently, in carrying out the crime or in bringing about a particular result. See K.S.A. 2016 Supp. 21-5202(h) (defining acting "intentionally" or "with intent" for purposes of criminal code); K.S.A. 2016 Supp. 21-5202(i) (defining acting "knowingly" or "with knowledge"); *Carapezza*, 286 Kan. at 999.

Admission of the shooting to prove Wilmer's intent in beating Cruce seems to be a stretch. Whoever attacked Cruce in August repeatedly struck her with closed fists, pursued her as she went out the backdoor of the house, and continued to strike her. The intent or anticipated result was the infliction of some degree of physical injury on Cruce. That is fairly obvious from the circumstances. The beating entailed an intentional course of conduct rather than an accident. Cruce's injuries were a foreseeable consequence of such conduct rather than an entirely unexpected result.

The shooting, however, seems to manifest a different intent. Wilmer did not shoot Cruce but the other adult in the car. As Cruce described the shooting, Wilmer stood at the driver's side door and shot past her to hit the passenger—something he would have realized. Although he had the means and opportunity to inflict a serious physical injury on Cruce, Wilmer did not fire a second shot. Assuming Wilmer's intent was to harm the passenger, the shooting seems to reflect propensity evidence—a disposition to engage in violent conduct—rather than otherwise relevant evidence bearing on the beating of Cruce.

10

Motive, however, presents a different calculus. Some evidence suggests Wilmer attacked and beat Cruce because he thought she was texting with another person. Given their relationship, a reasonable fact-finder could infer Wilmer believed the other person to be a rival for Cruce's attention, thus sparking an intense, violent reaction animated by rejection and jealousy. That would be a plausible motive. Just before the shooting three months later, Cruce texted Wilmer that she wanted nothing to do with him in response to his rather threatening demands that she respond to his messages. Wilmer came to her house, saw her in her car with a man, and shot the man. Given how the incident unfolded, a fact-finder could reasonably conclude Wilmer acted with a similar motive rooted in rejection and jealousy, prompting him to shoot a person he perceived as a rival.

The jurors, therefore, could draw a common motive for the beating and the shooting from circumstantial evidence surrounding each episode. But motive, as a state-of-mind issue, can be difficult to assess with assurance. So Wilmer could well have had other motives for his criminal behavior in either instance. Some crimes defy any sort of rational or discernible motive. The evidentiary basis for inferring Wilmer's motive for either the beating or shooting is relatively skimpy and comparatively indirect. That makes the shooting fairly weak evidence of motive for the beating. And, as we have pointed out, the prosecution is not obligated to prove motive at all.

In turn, the shooting is highly prejudicial and from our perspective unfairly so. The incident puts a deadly weapon in Wilmer's hands and demonstrates his willingness to use it. As bad as the beating of Cruce was (and it was undeniably vicious), Wilmer's criminal use of a handgun to shoot another person reflects a marked escalation of violence and dangerousness. The jurors reasonably could be concerned as much about the implications of that escalation as about the evidence directly related to the beating. They apparently were troubled. During deliberations, the jurors submitted a written question to the district court asking whether Wilmer had been charged in the shooting and the disposition of any charges. The district court simply responded that it could provide no

11

additional information to them. The inquiry implicates one of the dangers of other crimes evidence—jurors may be swayed to convict on the charged crimes regardless of the evidence because they believe a defendant should be punished for those other crimes.

On balance, the impermissibly prejudicial impact of the shooting incident outweighed its limited probative value. The district court erred in admitting the evidence. As with the erroneous admission of expert testimony, evidence improperly admitted under K.S.A. 2016 Supp. 60-455(b) may be harmless in a given case. We next consider the impact of the district court's evidentiary errors.

*Cumulative Error*

Appellate courts will weigh the collective impact of trial errors and may grant relief if the overall result deprives the defendant of a fair hearing even though the errors considered individually might be considered harmless. *Smith-Parker*, 301 Kan. at 167-68. The overall effect of the errors is measured against the trial record as a whole. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). Here, we look at the combined effect of the erroneous expert testimony and the impermissible 60-455 evidence. We do not say either of those mistakes was necessarily harmless in isolation; we simply pass over that determination because the cumulative impact did deprive Wilmer of a fair trial.

The errors were evidentiary ones and, thus, do not impact a constitutional right. We apply this test: "[W]hether there is a reasonable probability that the error affected the outcome of the trial in light of the entire record." *State v. Boleyn*, 297 Kan. 610, 627, 303 P.3d 680 (2013). As the party benefiting from the errors, the State bears the burden of proving harmlessness. 297 Kan. at 627-28.

The two errors here combined in an especially corrosive way. Andersen's testimony, including the discussion of the cycle of violence, tended to suggest to the

12

jurors that Wilmer may have repeatedly physically abused Cruce, thus fitting within the behavioral patterns generally described in that testimony but unsupported in the evidence describing their relationship. The later shooting underscored Wilmer's violent propensities and left the jurors speculating about whether he would be called to answer for that episode. Despite the evidence that Wilmer attacked and beat Cruce, the prosecution has not dispelled "the reasonable probability" those trial errors—and the highly prejudicial implications they spawned—influenced how the jurors considered the case and fostered in them a belief they needed to convict on the most serious charges because of Wilmer's general dangerousness. Those influences permeated the trial and tainted each of the convictions. We, therefore, reverse Wilmer's convictions and remand for a new trial.

We have not addressed Wilmer's third point on appeal. And given our decision, we need not resolve it. Despite Wilmer's request, the district court declined to instruct the jury on any lesser degrees of aggravated battery, finding that Cruce's injuries amounted to great bodily harm as a matter of law. The appellate courts have generally treated the degree of injury as a jury question in aggravated battery cases. See *State v. Cooper*, 303 Kan. 764, 770-71, 366 P.3d 232 (2016). The issue affects only the aggravated battery conviction, which, of course, we have reversed on other grounds.

Reversed and remanded.